IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| BRISTOL-MYERS SQUIBB COMPANY and PFIZER INC., <br><br> Plaintiffs, <br><br> v. <br><br> AUROBINDO PHARMA USA INC., <br><br> Defendant. | C.A. No. 17-374-LPS (Consolidated) |
| BRISTOL-MYERS SQUIBB COMPANY and PFIZER INC., <br><br> Plaintiffs, <br><br> v. <br><br> MYLAN PHARMACEUTICALS INC., <br><br> Defendant. | C.A. No. 17-379-LPS |

**MEMORANDUM ORDER**

1. Pending before the Court are the parties' disputes as to how the venue-related discovery previously ordered by the Court (*see, e.g.*, C.A. No. 17-379 D.I. 36, 37) is to occur. Having heard argument on November 15 (*see* C.A. No. 17-374 D.I. 40 (hereinafter, "Transcript" or "Tr.")), and having considered the parties' subsequently-filed joint status report (C.A. No. 17-374 D.I. 39) ("Report"), IT IS HEREBY ORDERED that, for reasons to be explained below:

> A. The parties' agreed-upon steps – (i) Defendant Mylan Pharmaceuticals Inc. ("MPI") will serve supplemental declaration(s) addressing venue-related topics (*see* Report at 1, 4 ¶ 1, 5 ¶ 1), including MPI's relationship with any

1

parent, subsidiary, and affiliated entity, and (ii) the parties will, by December 8, submit a proposed form of protective order – are ADOPTED.

B. MPI's supplemental declaration(s) shall be served no later than December 15, 2017. The Court agrees with MPI that this is a reasonable deadline.

C. On the remaining disputes – as to the scope and timing of discovery, and when the parties should present additional future disputes to the Court – Plaintiffs' Bristol-Myers Squibb Company and Pfizer Inc.'s ("Plaintiffs") proposals (Report at 5-7 ¶¶ 2-7) are ADOPTED, subject only to the following brief extensions of some of Plaintiffs' proposed deadlines:

(i) to the extent MPI objects to the scope of discovery requests served by Plaintiffs, it shall serve objections no later than January 12, 2018, on which the parties shall meet and confer by January 19, and the parties shall present any unresolved, ripe disputes to the Court (pursuant to the Discovery Matters procedures) no later than January 26;

(ii) subject to objections, MPI shall provide complete substantive responses to the written discovery by January 31; and

(iii) venue-related discovery shall be completed by the later of March 15 or 45 days after resolution of disputes presented to the Court in accordance with this Order.

2. The Court has made these determinations based on its finding that Plaintiffs' overall proposal is more reasonable, persuasive, and consistent with the Court's prior rulings and

guidance, than is MPI's proposal. For instance, MPI appears to expect Plaintiffs to accept all representations in its forthcoming declaration(s) without the necessity of follow-up beyond interrogatories (*see* Report at 2-3), but the Court has already stated that "[P]laintiffs are going to have to be given some limited chance to take discovery sufficient to test whatever it is they're being told by the defendant" (*see* Tr. at 39), which will include (if Plaintiffs wish) depositions. Also, MPI complains that "Plaintiffs offer no legal basis for how any Mylan entity's submission of any document to the Delaware state government . . . could establish venue of MPI" (Report at 3), but, as Plaintiffs observe, these submissions "would include forms with addresses and property tax records," which may be "probative of whether a Mylan entity exercises control over a physical place of business in Delaware" (*id.* at 8 n.3). Nor does the Court agree with MPI's suggestions that the Report mostly reveals "largely undisputed aspects of the procedural schedule" (Report at 4) or that Plaintiffs' proposal is "expansive" and will "unnecessarily prolong the dispute and tax the resources of the Court and the parties" (*id.*). Instead, it is the Court's view that MPI has raised important, unsettled, novel questions as to whether this District is a proper venue for this Hatch-Waxman patent litigation, and Plaintiffs have made reasonable proposals to obtain the discovery necessary to allow the parties, and the Court, to answer these questions, without disturbing the overall progress of this case (or the many related cases).[1] Furthermore, as Plaintiffs correctly state, "[t]o the extent the parties disagree about a specific request after good-faith negotiations to refine it, the Discovery Matters procedure remains available for MPI to seek relief." (Report at 9)

---

[1] There are presently at least 20 related cases pending in this District. Trial is scheduled for October 2019. (*See* C.A. No. 17-374 D.I. at 22 ¶ 21)

3

3.  The Court pastes below certain pertinent portions of the guidance it previously provided the parties, in connection with its denial of MPI's earlier request that the Court deny the entirety of Plaintiffs' request for any venue discovery. (C.A. No. 17-379 D.I. 45 at 3) The Court stated the following at the conclusion of the November 15 teleconference:

> ... I view the dispute in front of me today as actually a pretty narrow one. MPI's request is that I ... outright den[y] ... the venue discovery that I had ordered in my earlier opinion [C.A. No. 17-379 D.I. 36], which was [issued] pre-*Cray*[2] and that the plaintiffs now seek. That request, that is, to outright deny all venue discovery, that request is denied.
>
> I don't believe that plaintiffs are engaged in a fishing expedition. .... And I don't think that the decision in *Cray* makes the theories of venue being articulated by plaintiffs frivolous and, therefore, I don't believe that some targeted limited amount of discovery would be futile. ...
>
> ... I think it is important that today is a discovery dispute. I don't view myself today as being tasked with deciding on the merits whether MPI has a regular and established place of business in Delaware as that term has been explained by *Cray*. I also do not view myself as being faced with the task today of deciding if MPI has met its burden to show that it lacks a regular and established place of business here. And I'm also not, today, in a position to articulate with full precision exactly what the impact of *Cray* is on the facts here as they may be. That's a process, as I'm sure you will appreciate, I'm actively engaged in in this case and others in examining and reexamining *Cray* and trying to figure out how it does apply, for instance, here. Here, I remain of the view that at least some limited discovery is necessary in order for me to make that final application of *Cray* and the statute [28 U.S.C. § 1400] to the facts here.
>
> I continue to believe that discovery may reveal that MPI does have a regular and established place of business in Delaware and that venue would therefore be proper here. When I look at the declarations submitted to this point, ... they do not address

---

[2]*In re Cray Inc.*, 871 F.3d 1355 (Fed. Cir. 2017).

4

whether or not any of the affiliates, subsidiaries, parents, potential alter egos, that is, the other entities in the Mylan corporate family, [including] Delaware subsidiaries of MPI, . . . have a regular and established place of business in Delaware.

In my view, *Cray* does not address whether a physical place of a corporate affiliate or subsidiary or alter ego or agent can, for venue purposes, be attributed to the named defendant in a case. . . . And I have not heard yet any persuasive reason to conclude the law has changed on that point.[3] I'm not even sure that MPI is arguing that the law has changed on that point.

. . . MPI seems to acknowledge that at least an alter ego or a sham entity, if that were what the record ultimately showed, would allow the place of business of . . . that sham entity to be attributed to the named defendant for purposes of assessing regular and established place of business for purposes of determining proper venue. The point being that the legal theory that I think motivates the plaintiffs' allegations of venue do[es] not constitute a theory that I can say at this point that *Cray* even addressed, much less eliminated or rendered invalid or inapplicable. So the Court can't say that plaintiffs' allegations regarding the potential contacts of those other corporate entities in the Mylan family are frivolous.

. . . . *Cray*, instead, considers whether a physical place of a defendant's employee can be treated as a physical place of a named defendant. That's a different question than the question before me today. . . .

I think *Cray* says that what happens at the place of an employee can still be considered for evaluating whether or not the named defendant has a place. For instance, *Cray* talks (I think positively) about *Cordis*[4] and . . . the employee in *Cordis*: what he was doing in his home with respect to, for instance, the defendant['s] literature and products. And *Cray* seems to say that even post-*Cray*, *Cordis* is good law and that that [the] *Cordis* employee's place in the district could be treated as the named

---

[3]*See, e.g., Minn. Min. & Mfg. Co. v. Eco Chem, Inc.*, 757 F.2d 1256, 1265 (Fed. Cir. 1985) ("[V]enue in a patent infringement case [may be] proper with regard to one corporation by virtue of the acts of another, intimately connected, corporation.").

[4]*In re Cordis Corp.*, 769 F.2d 733, 737 (Fed. Cir. 1985).

5

defendant's place[,] or at least that place of the employee could be considered as a relevant factor in determining whether the named defendant has a place.

But even putting that aside, I think as importantly, the question of whether you can consider the physical place of a defendant's employee as part of the analysis of whether or not the named defendant has a physical place is a different question than whether you could treat the physical place of a corporate affiliate, corporate subsidiary, corporate parent, [or] corporate alter ego as the physical place of the named defendant. . . . [I]t seems to me that *Cray* gives a couple of reasons for why the employee's place may in some circumstances not be attributable [to] or treated as part of the named defendant's place; reasons that don't seem, at least on the surface, to apply to the question in front of me today.

For instance, *Cray* talks about [how] an employee can change jobs and therefore it would seem odd, at least in some cases, to treat the employee's home as the place of the defendant. But the types of entities that are alleged to be part of the Mylan family[,] and therefore affiliates in some way of MPI[,] I don't think could as easily terminate their affiliation with MPI. It seems easier to imagine an employee going to another employer than say a subsidiary of MPI suddenly not being a subsidiary of MPI. So that might be a meaningful distinction.

And, second, *Cray* talks about [how] the employee's home is often not established or ratified by the defendant. I'm not sure that that will often be the case with respect to a corporate subsidiary or corporate affiliate's place. That is, the facts here may show that the corporate subsidiary or corporate affiliate's place is established or ratified by the named defendant . . . .

MPI emphasizes repeatedly that the record in [its] view already establishes that there is no relationship between any of the other related entities and the ANDA at issue in this case. I have not yet been pointed to where *Cray* or any other case at least from the Court of Appeals tells me that such a relationship is required in order for venue to be appropriate.

. . . . Also important to my decision, and I think undisputed, is *Cray* repeatedly [states] that regular and established place of business issues are fact specific. That favors . . . in a

> difficult case granting some discovery . . ., in order to allow the
> Court to make a fact specific decision on a full record . . . .

(Tr. at 33-39) (internal punctuation and paragraph spacing added)

    4.      The Court adheres to and adopts the statements recorded in the transcript above, which have informed the Court's rulings on the disputes addressed in this Memorandum Order.

November 28, 2017  
Wilmington, Delaware

                  HONORABLE LEONARD P. STARK  
                  UNITED STATES DISTRICT COURT