

May 10, 2018

**VIA E-FILING**
The Honorable Leonard P. Stark
U.S. District Court for the District of Delaware
844 North King Street
Wilmington, DE 19801

  Re: *Bristol-Myers Squibb Co. et al. v. Aurobindo Pharma USA Inc.*,
    <u>C.A. No. 17-374-LPS</u> **(consolidated)**

Dear Chief Judge Stark:

  When the parties in these consolidated ANDA cases negotiated a scheduling order last year, they agreed to defer setting "limits for deposition discovery, including locations for depositions," until this month. D.I. 19, ¶ 8(g). They did this so the limits could better reflect the needs of this case, but the parties that remain, Plaintiffs BMS and Pfizer along with 12 generic drug companies ("Defendants"), disagree about what those needs are. Plaintiffs seek reasonable limits and default rules to keep discovery on track, but Defendants seek expansive limits—limits that are out of step with the reality that they have raised only common defenses—and want to negotiate routine issues, like locations, on a case-by-case basis from a blank slate. Plaintiffs' proposal will conserve the resources and minimize the need to burden the Court with disputes.

  Far-reaching discovery is unnecessary in this case. It involves only two patents—one of which is a compound patent that has not been challenged by half of the Defendants—no damages claims, no at-risk launches, and no fact-intensive unenforceability defenses, such as inequitable conduct. Based on the parties' contentions, which Defendants mostly served jointly, the only issues likely to be tried are infringement and validity. The former will primarily require discovery from each of the Defendants, and the latter will primarily require discovery from the Plaintiffs. This case's only complication is the large number of remaining Defendants.

  Plaintiffs' proposed deposition protocol, Exhibit 1, allows each side to take testimony that is proportional to the needs of the case and sets default rules for routine matters. Plaintiffs' proposed limits reflect that the Defendants have coordinated on most issues, but they still give individual parties the chance to seek testimony on any non-common issues (to the extent any such issues exist). Plaintiffs' proposal also ensures that the parties' focus will be on completing depositions in an orderly manner, rather than negotiating each element of each of dozens of depositions on a case-by-case basis with many parties. It provides a common starting point to minimize the risk of disputes and impasses that could threaten the discovery completion dates that the Court has set, but also allows ample flexibility where good cause requires it.

  The Defendants seek much more deposition time than Plaintiffs—over 3 times as many hours—and wish to negotiate each deposition's terms on an ad hoc basis. But the events leading up to this dispute show why that would be a bad idea, given the number of parties. Rather than negotiate a joint deposition protocol, the Defendants sent Plaintiffs the same proposal twice and refused to compromise on any of its terms, even in response to compromises from the Plaintiffs. Default rules, as in Plaintiffs' proposal, avoid the need for such unfruitful negotiations.

  The following sections summarize the parties' competing proposals.

1. **Fact Deposition Limits.**

    a. *Total Time.* Plaintiffs propose that Defendants collectively be limited to 105 hours of testimony, which is the equivalent of 15 seven-hour depositions. This is appropriate given the facts and issues in this case. There is a total of ten named inventors, six of whom are inventors on a patent that is not at issue for half of the Defendants, and Plaintiffs' initial disclosures identify two more people with knowledge about the core issues in the case (i.e., the research program director and a marketing executive). Plaintiffs' proposal gives Defendants enough time to depose all these witnesses and any other key people they learn about during discovery. It is also in line with limits this Court has endorsed in ANDA cases of similar or greater complexity.[1]

    Defendants' proposal is much more expansive. It would allow Defendants collectively to take 200 hours of testimony and each Defendant individually to take 10 more hours of testimony. With the current number of Defendants, that is a total of 320 hours—or more than 45 seven-hour days—of depositions. There is no need for so much discovery in this case, particularly given the current claims and the coordinated nature of Defendants' defenses. It is telling that Defendants' proposal seeks nearly 50 more hours of deposition time than many of the same parties recently agreed to in another ANDA case before this Court—a case that involves more than twice as many patents and parties as this one. *See* D.I. 22, ¶ 8(g), *Biogen Int'l GmbH v. Amneal Pharms. LLC*, C.A. No. 17-823-LPS (D. Del. Feb. 2, 2018) (Ex. 4) (allowing defendants 100 hours collectively and 7 more hours individually in case involving 25 defendant groups and 5 patents).

    b. *Total Witnesses.* Plaintiffs' proposal also includes caps on the total number of depositions that both Defendants and Plaintiffs may take. These caps—20 for the Defendants collectively and 7 for the Plaintiffs per defendant group—will reduce the disruption to each party's business that an excessive number of short depositions would cause. Both the Federal Rules and this Court have adopted such caps, and there is no reason to forgo them here. *See, e.g.*, Fed. R. Civ. P. 30(a)(2)(A)(i) (10 depositions per side); *Pfizer* Order (Ex. 2), ¶ 7(i)(i) (depositions under 5 hours count as 5 hours toward limits).

    c. *Inventor Deposition Length.* Plaintiffs maintain that nearly all depositions can be taken in seven hours, as required by Rule 30(d)(1), but the Defendants seek more time with each of the ten inventors. Defendants have not articulated why this additional time is necessary. The mere fact that there are many Defendants cannot justify it because, again, the Defendants are largely coordinated in their validity challenges, having served joint contentions. Nonetheless, Plaintiffs are willing to extend inventor depositions by one hour, for a total of 8 hours on the record, if it occurs on the same day. Defendants' proposal, 10 hours, would likely require splitting each of the ten inventor depositions over two days, requiring Plaintiffs' witnesses (and counsel for all parties) to spend up to 10 additional days away from their other responsibilities. The cost of Defendants' proposal outweighs its limited benefit, so the Court should not adopt it.

---

[1] *See, e.g.*, D.I. 18, ¶ 7(i), *Pfizer Inc. v. Micro Labs USA Inc.*, C.A. No. 17-158-LPS (D. Del. Sept. 21, 2017) (Ex. 2, "*Pfizer* Order") (limiting defendants collectively to 100 hours in ANDA case involving 5 defendant groups and 3 patents); D.I. 21, ¶ 8(i), *Onyx Therapeutics, Inc. v. Cipla Ltd.*, C.A. No. 16-988-LPS (D. Del. Apr. 18, 2017) (limiting defendants collectively to 115 hours in ANDA case involving 9 defendant groups and 9 patents) (Ex. 3).

2. **Deposition Locations.** Paragraph 7(e)(ii) of the Court's model scheduling order requires parties seeking relief in Delaware, including their representatives, to submit to depositions in Delaware. That is what Plaintiffs propose as a default rule, with two modifications: the rule should extend to all parties in this case and should include all their current and former employees (if the party controls the former employee). The first modification affects only two Defendants, Aurobindo and Zydus, which did not file counterclaims in this case; the rest of the Defendants did. But these parties are not typical defendants—they are ANDA applicants seeking U.S. regulatory approval to launch competing products in the U.S. market before Plaintiffs' patents expire. Any burden that Aurobindo and Zydus may face in bringing a handful of foreign-based employees here to testify is small compared to the benefit they seek. That is also why Plaintiffs' second modification is reasonable. The burden that Plaintiffs would face in traveling to 12 different locations around the globe during the short fact discovery period far outweighs the minimal burden that each Defendant would face in making a small number of its employees available in the country where it is seeking to sell its drugs.

Defendants propose negotiating deposition locations on a case-by-case basis. But with the large number of depositions that will necessarily need to happen in this case and the large number of parties that will need to attend many of them, that is not feasible. A default rule is necessary, and this Court's model scheduling order provides it. To the extent any witness might face barriers or undue hardships traveling to this District, Plaintiffs will negotiate a compromise in good faith, and, if necessary, Defendants can seek relief from the Court. Plaintiffs have already proposed a reasonable compromise to ease the parties' travel burdens—that depositions presumptively occur in New York with default backup locations in London and Los Angeles. Plaintiffs remain open to those terms, but Defendants have rejected them with no explanation.

3. **Expert Depositions.** Plaintiffs' proposal sets expert deposition limits as well, adopting the typical baseline rule that experts will be deposed for one day or, if testifying about both infringement and validity, two consecutive days. Defendants propose deferring this discussion until later, but there is no reason to do that. To give the parties' potential experts a modicum of certainty that they will not be required to sit for endless depositions, the Court should adopt the standard rule that Plaintiffs have proposed; if necessary, it can be modified later.

4. **Other Default Rules.** Plaintiffs' proposal sets default rules for several common pre-deposition and deposition-conduct issues, like procedures for setting deposition dates, responding to 30(b)(6) notices, disclosing attendees, and setting start times. These issues may rarely be controversial but, with enough parties involved, the ad hoc negotiations that Defendants propose can consume inordinate amounts of time and lead to disputes. Likewise, to streamline depositions, Plaintiffs' proposal allows objections made by one party to preserve objections for all parties and reminds counsel to refrain from speaking objections and improper instructions not to answer. *See, e.g., Tuerkes-Beckers, Inc. v. New Castle Assocs.*, 158 F.R.D. 573, 575 (D. Del. 1993); Fed. R. Civ. P. 30(d)(3). Courts overseeing other few-plaintiff/many-defendant cases have adopted similar conduct rules—as well as many of Plaintiffs' other proposed default rules—to ensure that large depositions proceed smoothly. *See, e.g., Fed. Hous. Fin. Agency v. UBS Ams., Inc.*, C.A. No. 11-5201-DLC, 2012 WL 5954817, at *5-6 (S.D.N.Y. Nov. 28, 2012).

\* \* \*

For the reasons above, the Court should adopt Plaintiffs' proposal for deposition limitations and enter Exhibit A as an addendum to the Scheduling Order (D.I. 19).

                                            Respectfully submitted,

                                            /s/ Michael J. Farnan

                                            Michael J. Farnan

cc:  All Counsel of Record (Via E-File)