# FARNAN LLP

May 11, 2018

**VIA E-FILING**
The Honorable Leonard P. Stark
U.S. District Court for the District of Delaware
844 North King Street
Wilmington, DE 19801

>  Re:  *Bristol-Myers Squibb Co. et al. v. Aurobindo Pharma USA Inc.*,
>  C.A. No. 17-374-LPS **(consolidated)**

Dear Chief Judge Stark:

These cases were consolidated because Defendants' invalidity claims are common to all of them. Defendants' behavior reflects that. For the most part, they have served joint invalidity contentions, joint discovery requests, and joint discovery-dispute letters—including the joint letter they filed yesterday (D.I. 158). But the Defendants' deposition proposal brushes aside the commonality in their claims and ignores two important consequences of consolidation, one substantive and the other practical, as explained below. The Court should reject their proposal and adopt Plaintiffs' (D.I. 157-1) because Plaintiffs' proposal better reflects the realities and needs of this case.

## I. Defendants' proposal for nearly 45 days of deposition time is vastly disproportional to their claims and defenses.

Defendants propose that they be allowed to take, in total, 310 hours[1] of deposition testimony from Plaintiffs' witnesses. This is nearly 45 full deposition days, and Defendants' proposal places no limit on the number of witnesses they may seek to depose and even carves out third-party depositions from the total. Defendants offer two reasons for this: they say it is necessary to achieve parity with the amount of deposition testimony that Plaintiffs may take and to allow them to take testimony from "more than twenty potential," and unidentified, "deponents." D.I. 158 at 1. Neither justification is persuasive.

Defendants first contend that because Plaintiffs get 330 hours of deposition time to develop the record on 11 different infringement claims, they should get 310 hours of deposition time to develop their single joint invalidity defense.[2] D.I. 158 at 2. This emphasis on numerical parity overlooks that the Defendants' claims are based on common facts (i.e., the inventiveness of Plaintiffs' two patents) while Plaintiffs' claims are based on Defendant-specific facts (i.e., the nature of their 11 different products). Plaintiffs need to develop 11 unique infringement cases with *less than half* the deposition time they would be permitted under the Federal Rules if these cases had not been consolidated (i.e., 30 hours instead of 70); Defendants, however, are asking

---

[1] Defendants' letter says 320 hours, but another case was resolved after the parties filed their letters yesterday evening. *See* D.I. 159 (stipulation of dismissal for the Wockhardt case).

[2] Plaintiffs do not dispute that "each defendant possesses distinct defenses based on its unique ANDA product." D.I. 158 at 1. But those are *non-infringement* defenses; none of the defendants have unique invalidity defenses. The relevant facts for each Defendant's non-infringement defenses will mostly come from its own witnesses, not Plaintiffs'.

for *over four times* the deposition time they would be allowed under the rules (i.e., 310 hours instead of 70) to develop the same invalidity case that each Defendant would have needed to develop if it had been the only defendant in the case. Expanding Defendants' deposition time just to balance the overall numbers is arbitrary and does not justify this extreme disparity.

Defendants' argument that they need additional time to depose all the relevant witnesses fares no better. As explained in Plaintiffs' opening letter, Plaintiffs' proposed limit—105 hours divided among up to 20 witnesses—allows the Defendants more than enough time to depose the inventors, everyone on Plaintiffs' initial disclosures,[3] and other witnesses that Defendants might identify during discovery. D.I. 157 at 2. Defendants do not dispute this but instead argue they need more time to depose witnesses *beyond the key witnesses*—including witnesses related to an Orange Book-listed patent that is not in the same family as either asserted patent, that no Defendant has challenged, and that Plaintiffs are not asserting; authors of "potentially relevant" but unidentified prior art; and unspecified numbers of "persons present for and involved in the launch and initial advertising and marketing" of Plaintiffs' product, even though Plaintiffs' initial disclosures list a current marketing executive and damages are not an issue in this case. D.I. 158 at 2. Tripling the time limits to allow depositions that are, at best, "potentially relevant" would not be "eminently reasonable," *id.* at 2-3—it would be authorizing a fishing expedition and leaving the door open for harassing discovery.

## II. Defendants' refusal to set default rules for the many depositions that will occur in this case will mire the parties in endless negotiations and discovery disputes.

Aside from its request for expansive deposition limits, the remainder of the Defendants' proposal is nothing more than an agreement to meet and confer about scheduling, location, and basic ground rules on a witness-by-witness basis, starting from scratch each time for dozens of depositions. Consolidation means this case will have many more depositions with many more people in the room than a typical case, making these negotiations unusually complex. And Defendants' unwillingness to compromise about any issues in the deposition protocol, notwithstanding Plaintiffs' concessions, does not bode well for future negotiations on these topics.[4] *See* D.I. 157 at 1. Default rules for locations, scheduling procedures, and routine issues, as Plaintiffs have proposed, are necessary to minimize the need for these negotiations and to avoid the inevitable disputes that will arise from them. *See, e.g.*, MANUAL FOR COMPLEX LITIGATION (FOURTH) § 11.451 (2004) (describing typical default rules for complex cases).

---

[3] Defendants suggest that Plaintiffs have withheld information by not listing all inventors on the asserted compound patent on their initial disclosures. Not so. Only 13 of the compound patent's 82 claims are at issue in this case. Plaintiffs listed the inventors "likely to have discoverable information" for the asserted claims on their disclosures, as required by Rule 26(a)(1)(A)(i). The remainder are on the face of the patent and, as explained in our opening letter, D.I. 157 at 2, Plaintiffs' proposal allows Defendants to seek to depose all of them with ample time left over.

[4] Throughout their letter, Defendants refer to "discussions that reached an impasse" and otherwise imply that Plaintiffs refused to compromise. This distorts the facts. Even when it became clear that this dispute would be submitted to the Court, Plaintiffs told Defendants that "we remain open to further negotiation before the Court acts on our respective proposals." Ex. 5. Over a week has passed, and Defendants have not responded to that offer.

Plaintiffs' proposal recognizes that complex litigation requires the parties to be flexible. Part of that flexibility is committing to guidelines about where, when, and how depositions will happen so the parties and witnesses know what to expect and so these issues do not need to be repeatedly negotiated; another part is being reasonable about granting exceptions to those default rules when there is good reason to do so. Defendants' objections to committing to default rules boil down to a single issue—they appear not to believe that Plaintiffs will grant exceptions where warranted, contending that the rules will be applied in a "rigid," "absolute," and "byzantine" way or will apply an "undefined 'good cause' standard" that somehow deviates from "good cause" as it is routinely understood in litigation. D.I. 157 at 3. But Plaintiffs have given Defendants no reason for such doubt and have offered to consider any additional language Defendants want to propose to ensure that the default rules can be modified as necessary. *See* Ex. 5 at 1, 4. Defendants' unfounded mistrust is not a reason to mire the parties and perhaps the Court in deposition-related discovery disputes by forgoing default rules entirely.

Defendants' general arguments that Plaintiffs' proposals abrogate their rights likewise ring hollow. As explained in Plaintiffs' opening letter, our proposal on deposition locations is this Court's standard rule for default locations, slightly modified to reflect the economic realities of this case. Likewise, Plaintiffs' scheduling proposal is merely meant to ensure that depositions do not all get pushed to the final weeks of fact discovery, threatening that deadline. And Plaintiffs' proposals on objections just emphasize the standard rules for fair and efficient deposition conduct—something that courts routinely do in deposition orders for complex cases. *See* MANUAL FOR COMPLEX LITIGATION (FOURTH) § 11.456 (2004) ("The court can inform counsel at the outset of the litigation, preferably by written guidelines, of the court's expectations with respect to the conduct of depositions, thereby reducing the likelihood of problematic conduct such as speaking and argumentative objections, instructions not to answer, coaching of witnesses (including restrictions during recesses in the deposition), and evasive or obstructive conduct by witnesses.") (citations omitted); *see also id.* § 40.29.

Defendants' final argument—that scheduling and conduct issues should be determined in a separate agreement and not in the scheduling order—is reasonable in theory but has not been possible in practice. When Defendants first made this argument on the parties' April 30th meet-and-confer, Plaintiffs said they were open to a side agreement and asked Defendants to propose one. They never did. For the reasons above and in Plaintiffs' opening letter, default rules are necessary for these logistically complicated depositions. In the absence of an agreement about them, there is ample precedent for the Court to order them. *See, e.g., Fed. Hous. Fin. Agency v. UBS Ams., Inc.*, No. 11 CIV. 5201 DLC, 2012 WL 5954817, at *5 (S.D.N.Y. Nov. 28, 2012) (in a two-plaintiff, 16-defendant case, adopting default locations, a procedure for scheduling and noticing of depositions, rules for objections, default start times, an exhibit numbering scheme, and a procedure for notices of intent to attend). Doing so would not be a "deviati[on] from standard litigation practice" as Defendants suggest, D.I. 157 at 3—to the contrary, for a large case like this one, it is standard litigation practice. *See* MANUAL FOR COMPLEX LITIGATION (FOURTH) § 40.29 (2004) (model order setting default rules for many of these issues).

*   *   *

For the reasons above, the Court should reject Defendants' proposal and enter Plaintiffs' Exhibit 1 (D.I. 157-1) as an addendum to the Scheduling Order (D.I. 19).

                                    Respectfully submitted,

                                    /s/ Michael J. Farnan

                                    Michael J. Farnan

cc: All Counsel of Record (Via Electronic Mail)