1                    IN THE UNITED STATES DISTRICT COURT

2                    IN AND FOR THE DISTRICT OF DELAWARE

3                              - - -

   BRISTOL-MYERS SQUIBB COMPANY
4  and PFIZER INC.,                    : CIVIL ACTION
                    Plaintiffs,    :
5  v                                   :
                                       : (Consolidated)
6  AUROBINDO PHARMA USA INC.,          :
                                       : NO. 17-374-LPS
7                   Defendant.

8                              - - -

9                       Wilmington, Delaware
                   Wednesday, September 25, 2019
10                     *Telephone Conference*

11                             - - -

12 BEFORE:       HONORABLE JENNIFER L. HALL, Magistrate Judge

13 APPEARANCES:              - - -

14
                  FARNAN, LLP
15                BY:  MICHAEL J. FARNAN, ESQ.

16                    and

17                WILMER CUTLER PICKERING HALE and DORR, LLP
                  BY:  TIMOTHY A. COOK, ESQ., and
18                     ANNALEIGH E. CURTIS, ESQ.
                       (Boston, Massachusetts)
19
                         Counsel for Bristol-Myers Squibb
20                       Company and Pfizer Inc.

21
                  PHILLIPS GOLDMAN McLAUGHLIN & HALL, LLP
22                BY:  DAVID A. BILSON, ESQ.

23                       Counsel on behalf of Sigmapharm
                         Laboratories, LLC; Unichem Laboratories,
24                       Ltd., and Zydus Pharmaceuticals (USA) Inc.

25                       Brian P. Gaffigan
                         Registered Merit Reporter

```
 1    APPEARANCES:   (Continued)

 2                      and

 3            HUSCH BLACKWELL, LLP
              BY:  DUSTIN L. TAYLOR, ESQ., and
 4                 PHILIP D. SEGREST, JR., ESQ.
                   (Chicago, Illinois)
 5
                      Counsel on behalf of Sigmapharm
 6                    Laboratories, LLC

 7                    and

 8            GREENBLUM & BERNSTEIN, P.L.C.
              BY:  PAUL A. BRAIER, ESQ., and
 9                 P. BRANKO PEJIC, ESQ.
                   (Reston, Virginia)
10
                      Counsel on behalf of Unichem
11                    Laboratories, Ltd.

12                    and

13            LOCKE LORD LLP
              BY:  NINA VACHHANI, ESQ.
14                 (Chicago, Illinois)

15                    Counsel on behalf of Zydus
                      Pharmaceuticals (USA) Inc.
16

17            STAMOULIS & WEINBLATT, LLC
              BY:  STAMATIOS STAMOULIS, ESQ.
18
                      and
19
              PARKER POE ADAMS & BERNSTEIN, LLP
20            BY:  ROBERT L. FLORENCE, ESQ., and
                   KAREN L. CARROLL, ESQ.
21                 (Atlanta, Georgia)

22                    Counsel for Mylan Pharmaceuticals, Inc.

23

24

25
```

```
 1    APPEARANCES:   (Continued)

 2
                    YOUNG CONAWAY STARGATT & TAYLOR, LLC
 3                  BY:  KAREN L. PASCALE, ESQ.

 4                      And

 5                  LERNER DAVID
                    BY:  PAUL H. KOCHANSKI, ESQ.
 6                      (Westfield, New Jersey)

 7                          Counsel on behalf of Sunshine Lake
                            Pharma Co. Ltd., and HEC Pharm USA Inc.
 8

 9

10

11

12                          - oOo -

13                      P R O C E E D I N G S

14                  (REPORTER'S NOTE:  The following telephone

15    conference was held in chambers, beginning at 1:02 p.m.)

16                  THE COURT:  Good afternoon, counsel.  This is

17    Jennifer Hall.  We are here on the phone today for a

18    teleconference in Bristol-Myers Squibb Company, et al versus

19    Aurobindo Pharma USA, Inc., et al.  That is Civil Action No.

20    17-374- LPS.

21                      Can I have counsel for the plaintiffs introduce

22    themselves?

23                  MR. FARNAN:  Good afternoon, Your Honor.  It's

24    Michael Farnan.  With me on the line is Tim Cook and

25    Annaleigh Curtis from WilmerHale.
```

```
 1              THE COURT:  Good afternoon.  And for -- I'm not

 2    sure which defendants we have on the phone but could we

 3    start with Delaware counsel and then any outside counsel

 4    that are with you on the phone?

 5              MR. PHILLIPS:  Your Honor, this is Jack

 6    Phillips.  This conference is being held at the request of

 7    Sigmapharm.

 8              With me on the phone from Husch Blackwell are

 9    Dustin Taylor and Phillips Segrest.  Mr. Taylor will be

10    addressing the Court.  Also on the line are my other

11    clients, Zydus, Nina Vachhani from Locke Lord; and for

12    Unichem, Branko Pejic and Paul Braier.

13              THE COURT:  Good afternoon, counsel.

14              So let me just say at the outset --

15              MR. TAYLOR:  Good afternoon.

16              THE COURT:  -- I have carefully reviewed all of

17    the letters submitted in this case.  I have also carefully

18    reviewed all of the documents filed in support of those

19    letters.  I believe I have a good understanding of all of

20    the arguments set forth in the letters.

21              As for the posture of this dispute, it is my

22    understanding that the moving defendant is opposing

23    plaintiff's redaction of a monetary term from a document;

24    and that plaintiff's position is that it has a

25    confidentiality obligation to Mylan with respect to the
```

1    redacted information.

2              By the way, is Mylan on the call?

3              MR. STAMOULIS:  Good afternoon, Your Honor.

4    This is Stam Stamoulis on behalf of Mylan.  And with me on

5    the line is Karen Carroll and Robert Florence from the

6    Parker Poe firm.  Mr. Florence will be handling the response.

7              THE COURT:  Very good.  Thank you.  Sorry, I

8    didn't mean to skip you.

9              My understanding is that it's Mylan that is the

10   party in interest with respect to the redactions.  The

11   plaintiffs are otherwise taking no position on the

12   appropriateness of the redaction, but that Mylan's position

13   is that it is no longer a party to the litigation.

14             Again, as I said, I've carefully read and

15   considered the papers.  I agree with Mylan it is a third

16   party with respect to this dispute, and it has not waived

17   its ability to seek to keep this information redacted.

18             So with that in mind, I'd like to focus the

19   parties' arguments and ask everyone to limit their arguments

20   to addressing the issue of relevancy of the redacted

21   information.  Since this is defendant's motion, we'll hear

22   first from defendant.

23             MR. TAYLOR:  Yes, Your Honor.  Dustin Taylor on

24   behalf of Sigmapharm.

25             Your Honor, before we begin on the issue of

1    relevance, there has been a small change in circumstance

2    since the parties field their letter briefs that the Court

3    should be aware of.

4              One of the parties that originally joined the

5    motion, Aurobindo, has since settled.  Plaintiffs and

6    Aurobindo settled on August 23rd, 2019 and plaintiffs did

7    not produce that settlement document until September 20th,

8    2019; and when they did produce it, the amount paid for the

9    avoidance of litigation as in the Mylan agreement was also

10   redacted.  In other words, although Aurobindo originally

11   joined the letter request seeking that information from

12   Mylan, Aurobindo in fact redacted that same provision in its

13   own settlement agreement.

14             THE COURT:  I take it that Aurobindo is the one

15   that wants the information to remain protected, and that

16   plaintiffs take no position as with the other argument.  Is

17   that your understanding?

18             MR. TAYLOR:  That is my understanding.  Yes,

19   Your Honor.  Although I invite plaintiffs' counsel to

20   correct me if that is wrong.

21             THE COURT:  Okay.  Please proceed.

22             MR. COOK:  Your Honor, this is Tim Cook for

23   plaintiffs.

24             That is correct.

25             THE COURT:  Thank you.

1        MR. TAYLOR:  One final point on that, Your

2   Honor.  On Sunday, September 22nd, defendants requested to

3   meet and confer with counsel Aurobindo regarding this issue

4   with plaintiffs, and plaintiffs refused to meet and confer

5   regarding this until after the Court decides the Mylan issue

6   on this call, so that has not been teed up, but we hope Your

7   Honor's order today will resolve this issue.

8        THE COURT:  Understood.

9        MR. TAYLOR:  Unless your Honor has any

10  questions, I am prepared to turn to the relevancy argument.

11       THE COURT:  Please.

12       MR. TAYLOR:  Yes, Your Honor.  We believe that the

13  information is irrelevant to rebut claims that the asserted

14  patents are not obvious due to secondary considerations,

15  namely, that the patents have been licensed by others.

16       Defendants believe they should be permitted

17  to introduce evidence that although some parties may have

18  taken licenses to the asserted patent, those parties have

19  in some instances received monetary compensation.  This

20  is relevant to to rebut the claims that the party took a

21  license to the patent because the was novel and nonobvious.

22       In addition, the amount of the payment is

23  relevant for the same reason.  Evidence that a party was

24  paid a substantial amount versus nominal amount indicates

25  the parties purpose in taking a license.

```
 1                    THE COURT:  So that is not what --

 2                    MS. PASCALE:  Excuse me, Your Honor.

 3                    THE COURT:  Pardon me?

 4                    MS. PASCALE:  Excuse me, Your Honor.  This is

 5   Karen Pascale from Young Conaway for the defendants Sunshine

 6   Lake and HEC.  I'm sorry, I thought we had been introduced

 7   earlier.  I'm also on the line with co-counsel from the

 8   Lerner David firm, Paul Kochanski.

 9                    THE COURT:  Good afternoon.

10                    So I think --

11                    MS. PASCALE:  Thank you, Your Honor.

12                    THE COURT:  I think that was Mr. Taylor that was

13   just speaking.

14                    So your argument as to relevance is not what I

15   took from your letter.  I mean is it now your position that

16   there is some -- I guess the question is this.  It's now

17   your position that the parties, instead of this actually

18   being a term that is an accurate estimate of avoidance of

19   litigation cost, that instead the parties were somehow

20   shifting a very substantial monetary payment or

21   non-substantial monetary payment into this term and using

22   the redaction to try to hide that from you?  Because I

23   didn't take that from the letter you submitted.

24                    MR. TAYLOR:  Your Honor, we believe the term

25   "paid for the avoidance of litigation" is a critical
```

1    component of the license agreement.  It is part of the

2    agreement as a whole, and that information is relevant to

3    the evidence of nonobviousness.

4              THE COURT:  Okay.  Is there anything else you

5    wanted to say on relevancy or anything else in support of

6    you your letter?

7              MR. TAYLOR:  Yes, Your Honor.  In going beyond

8    the issue of relevance, we think that this is an important

9    issue of the parties' ability to essentially contract around

10   the protective order.  The protective order does not provide

11   that information may be withheld on the basis of some

12   supposed third-party confidentiality.  The protective order

13   provides very express provisions for how a party can protect

14   this information such as, for example, designating

15   information on the outside-counsel-only basis.

16             And paragraph -- excuse me.  Although Mylan

17   originally identified this information as protected data,

18   which is why much of Sigmapharm's initial letter addresses

19   this point, as the argument has developed, it shifted it

20   to somewhat more of a focus of competitively sensitive

21   information, and paragraph 7(b) provides that a party in

22   response to a discovery that produces competitive sensitive

23   information, that information can be shown to outside

24   counsel for other defendants.

25             So we believe that the protective order provides

1    sufficient protection for the parties and the parties'

2    plaintiff cannot contract around the protective order by

3    claiming some sort of third-party confidentiality.

4              THE COURT:  Again, I hear, and I think I was

5    trying to say this at the outset, plaintiffs are saying they

6    take no position.  But with respect to this dispute, Mylan

7    is now a third party.  They have no more interest in this

8    litigation because they have settled out.

9              So I mean, isn't what I'm supposed to be doing

10   is determining as a third party, does the burden of

11   producing this information on them outweigh the benefit to

12   you?

13             MR. TAYLOR:  Your Honor, our position is that

14   they didn't -- there is no portion of the protective order

15   that allows them to selectively redact otherwise relevant

16   information when the information is part of a relevant

17   document.  This is not a third-party subpoena.  Plaintiffs

18   have this information on a contracting party and the

19   information is being sought not in connection with Mylan

20   but in connection with plaintiffs' claim the patents are

21   nonobvious as evidenced in part by a party's willingness to

22   take a license to the patents.

23             THE COURT:  Well, what about --

24             MR. TAYLOR:  The burden to the third party --

25   yes, Your Honor.

1          THE COURT:  What about paragraph 21 of the

2     protective order that provides for relevance redactions?

3          MR. TAYLOR:  One second, Your Honor.  I'm

4     pulling that portion up.

5          That must be unrelated to apixaban or apixaban

6     containing products unrelated to any unasserted claim or

7     defense.  Here, the defense is relevant to apixaban because

8     there is a license agreement to the patent covering apixaban,

9     and it is also relevant to the asserted claims and defenses

10     of obviousness and their rebuttal thereto.

11          THE COURT:  Okay.  You can continue.  Is there

12     anything else you wanted to add?

13          MR. TAYLOR:  Your Honor, those were our main

14     points.  We are happy to address any other positions or any

15     other questions the Court may have.

16          THE COURT:  Is there any other defendant on the

17     phone that wishes to be heard on this issue?

18          Okay.  Hearing none, let's hear now actually

19     from the plaintiff as long as they're on the phone, and the

20     first question I have for the plaintiffs are, defendants

21     have made the point in their letter that you have refused to

22     confirm that you're not going to rely on these settlement

23     license agreements in support of your obviousness arguments

24     at trial, and then I have also heard him say here on the

25     phone today at least for the first time sort of an

1    articulation of what the relevance of that particular

2    monetary term could be.

3                    What is your response to that?

4                    MR. COOK:  Sure, Your Honor.  This is Tim Cook

5    for the plaintiffs.

6                    As far as whether we intend to affirmatively

7    rely on this, we have never affirmatively relied on any

8    settlement agreement in the case.  The single time that

9    the defendants are pointing to is this deposition of their

10   commercial success expert where we use a settlement agree-

11   ment with the party that is not Mylan and an agreement that

12   does not have the terms or the redacted information that

13   the defendants are seeking here.

14                   Simply to cross examine that expert and show

15   that very broad point that he had made in his expert report

16   was not factually correct.

17                   THE COURT:  And that expert had --

18                   MR. COOK:  We do not intend to.

19                   THE COURT:  That expert had a good response to

20   that, it seemed to me after reading the transcript of the

21   deposition.  Are you planning to do the same thing at trial?

22   I'm not sure how persuasive that would be to Judge Stark in

23   light of the expert response to why that recent settlement

24   agreements don't really matter.

25                   MR. COOK:  Right.  We're not currently planning

to use a settlement agreement even on cross-examination at

trial.  Obviously, we don't know what evidence they're going

to put in in their direct, and we have told them that.  We

made this representation to them that we are not currently

planning to do this, but we largely can't answer the

question of what we definitively do not need to cross

examine an expert on this until we know what testimony is

coming in, but currently we have no intention of using a

settlement agreement with any party as part of our

affirmative case, and we also currently have no intention

of using it on cross-examination unless direct testimony

that we are not expecting comes in and makes it necessary.

          THE COURT:  Understood.  Is there anything else

you wanted to say in response to something you heard from

the defendant?

          MR. COOK:  Well, I think there are two main

points that I would like to clear up, and then I'd like to

clarify our position.  So the two points I'd like to clear

up is, first, the protective order arguments that we have

heard from my colleague, Sigmapharm.

          So we don't view this as a dispute about

whether the protective order is authorizing the redactions.

We view this as a dispute, a sort of third-party

run-of-the-mill confidentiality dispute.  We have a document

that Mylan has not provided consent for us to produce.  In

1    our responses to the defendants' discovery request, we said

2    that we would produce final license agreements subject to

3    any third-party confidentiality obligations and necessary

4    third-party consents.

5            We're simply withholding this document on the

6    basis of those objections, and we have been able to give

7    them a redacted version so they have almost all of the terms

8    of the agreement and to minimize any risk of a dispute, but

9    obviously that was not sufficient here.

10           The second point I'd like to clear up is the

11   point about Aurobindo.  So as I understand it, Aurobindo is

12   not represented on this call, and we have simply asked the

13   defendants to confer with Aurobindo and to reconvene later

14   in the week to the extent there is anything to talk about

15   after this call and after the defendants seek consent for

16   the production of the redacted agreement from Aurobindo.  I

17   don't believe they had that conversation with Aurobindo yet,

18   at least as of a couple of days ago, so we don't believe

19   that that dispute is ripe for resolution yet.

20           Just generally, our position is largely we view

21   this as a dispute between the defendants and Mylan because

22   of our contractual confidentiality obligation to Mylan.  We

23   are opposing the defendants' request, but we do think as we

24   laid out in our letter that there are timeliness, relevance,

25   and responsiveness concerns which the defendants' motion is

1    implicating.  I think the most important one from our

2    perspective is timeliness.  The defendants waited nearly

3    five months to raise each of these disputes after getting

4    the redacted litigation settlement agreement and after

5    finding out of the existence of the IPR agreement.

6            All of the expert reports in this case were

7    exchanged during this five months, and to the extent

8    that the defendants are saying this is somehow important

9    information for their defenses, we find it somewhat

10   difficult to believe that given that the entire expert

11   discovery period passed, the defendants knew about these

12   documents and they didn't seek them

13           So from our perspective, the timeliness here is

14   sort of a key issue that weighs against the relief they're

15   seeking, but as I said, we largely view this as an issue

16   between the defendants and Mylan, and we would ask that

17   Mylan be heard to address their specific concerns.

18           THE COURT:  Thank you, Mr. Cook.

19           Let's hear from Mylan to the extent they have

20   anything they want to say.

21           MR. FLORENCE:  Yes.  Good afternoon, Your Honor.

22   This is Robert Florence with Parker Poe.  I'd like to just

23   touch on a couple of things.

24           First, I'd like to touch on relevance briefly,

25   if I may.

1         It's Mylan's position that the amount that was

2    paid in the settlement agreement, on the face of it, the

3    agreement itself, it states that that amount was in fact for

4    the avoidance of litigation fees.  It's not tied to the

5    license in any way.  It's not tied to any of the license

6    terms.  All those terms have been provided to defendants as

7    they were produced by plaintiffs, not only gave permission

8    for that, and defendants have had all of the terms relating

9    to the license since January.

10        The payment itself is not tied to the license in

11   any way.  In fact, the license itself in Article 3.1(a)

12   indicates license itself is royalty free.  Mylan did not pay

13   any money for the license.

14        One thing I will touch on, defendants' counsel

15   is here today, stated for the first time its news to Mylan

16   they're now saying that the amount itself is relevant

17   because it could be an amount that was actually paid for the

18   license.

19        That is not something that was ever presented

20   to us on any of the meet and confers.  And as Your Honor

21   alluded to, that is not what you took from their letter

22   either.  I don't see anything like that argument in their

23   letter.  Today is really the first time we're seeing that;

24   and we have asked, in each of the meet and confers, we asked

25   the defendants' counsel, why is the amount that is paid for

1    going to litigation fees relevant to the license?  It's not

2    tied to it but, okay, even if their argument is ripe that

3    they're raising here for the first time, the amount

4    shouldn't matter.  For one, it's not tied to it.  And, two,

5    they're raising it for the first time.

6              So I don't know quite what to say for that

7    except Mylan did cite case law in its brief, I mean in its

8    letter brief that essentially showed examples of cases where

9    material license terms, even royalty amounts and information

10   related to royalty amounts have been properly redacted in

11   these same situations.

12             So the one case that is most pertinent to that

13   is the *Rembrandt Wireless v Samsung* case, it's a Federal

14   Circuit case, and it was affirming the District Court, the

15   lower court allowing there to be reduction -- redactions

16   of royalty amounts in order to preserve -- to prevent the

17   exposure of confidential business information.

18             I mean here, there is no question that every

19   defendant remaining in this case and all the other

20   defendants that settled out prior, which totalled over 20 of

21   the defendants, are Mylan's direct competitors for this

22   particular product.

23             It is Mylan's position that it has always

24   maintained that its financial information should be

25   protected as competitively sensitive and confidential and

1    require Mylan to disclose it to its competitors.  It's a

2    reflection of Mylan's settlement strategy that can cause

3    Mylan significant economic harm, and obviously Aurobindo

4    agrees because Aurobindo has now done the same thing.  So we

5    have another one of our competitors doing the same thing.

6              Turning now to the IPR termination agreement,

7    that agreement itself does not relate to the license that

8    is granted in the settlement agreement at all.  There are

9    no terms whatsoever in the IPR settlement -- in the IPR

10   termination agreement that convey any rights to any of the

11   patents that were in suit in the litigation.  The IPR

12   involved only the '975 patent -- excuse me, I misspoke --

13   the '945 patent, and it did not involve a license at all.

14   The license and all its terms are already in the settlement

15   agreement, and as we already argued, defendants have those.

16             Then part of that as well, all of the defendants

17   had an opportunity to join that IPR when it was instituted.

18   They could have joined it.  They could have been parties to

19   it.  They didn't.  And those terms are properly -- so that

20   agreement has been withheld, and Mylan believes properly so,

21   one, based on relevance because it doesn't relate even

22   relate to the production request that defendants are relying

23   on.  Mylan reads that request as going to licenses and other

24   agreements that somehow convey rights to at least one of the

25   patents-in-suit.  The IPR termination agreement doesn't do

1        that.  All the IPR termination agreement did was terminate

2        the IPR before the Patent Office.  There, that agreement was

3        submitted to the Patent Office designated as confidential

4        business information, and the same thing was done here.

5                I'm not sure I quite understand -- I think there

6        might be some confusion on this point, but I'm not sure I

7        quite understand defendants' argument that Mylan never

8        really argued that the information, the amount in the

9        settlement agreement was competitively sensitive business

10       information.

11               When it was produced by plaintiffs, it's marked,

12       right on the very top of it, it's marked as confidential

13       business information of Mylan Pharmaceutical Inc., so it

14       was designated as such.  So Mylan's position essentially is

15       just that it's certainly not relevant, the amount is not

16       relevant, and the IPR termination agreement is certainly

17       not relevant as well because that agreement doesn't convey

18       any rights in any of the patents; and to the extent the

19       settlement agreement does, well, that has all been produced.

20       The defendants already have that.

21               THE COURT:  Thank you very much.  And now let's

22       turn it back over to the plaintiffs to have the last word.

23               If you could, please start by addressing what I

24       think I heard.  I'm sorry.  This is going to be turning over

25       to the defendant to have the last word, the moving

1   defendant.   My apologies.

2            If you start, could you address plaintiffs'

3   statement on the phone today that they're not going to be

4   coming into court, at least as I heard it, and saying our

5   patent is not obvious because look at all the people who

6   have took a license.   They're not going to be saying that,

7   and they're not going to introducing the licenses as

8   relevant to secondary considerations of nonobviousness.

9            Can you address in light of that position why

10   this is still relevant?

11            MR. TAYLOR:   Your Honor, our position is we

12   asked for an unequivocal statement.   They would not use

13   these license agreements during trial, and they refused to

14   provide that.

15            Even on this call today, they are making it

16   contingent upon what else may foresee.   We would ask that

17   if, as an alternative to produce, providing an unredacted

18   copy, that plaintiffs would be precluded from admitting

19   references or arguing any of the license agreements during

20   trial.   Unredacted copies were not provided.

21            THE COURT:   So do you mean -- so this is one

22   thing I didn't get from your letter.   Do you mean any of the

23   license agreements?   Because I understand there are some

24   older license agreements that may come into play in this

25   case.   We have multiple plaintiffs, and there may be a

1    licensing agreement between them.  Are you talking about

2    license agreements with the settling defendant?  Is that

3    what you want them to agree to or do you want something

4    broader?

5              MR. TAYLOR:  No, Your Honor.  The settling

6    defendants.

7              THE COURT:  I hear them saying today they're not

8    going to bring it up unless you bring it up.  So if they

9    have an agreement that says they're not going to bring it up

10   unless you do, does that satisfy your concern?  Because that

11   is the contingency I heard.

12             MR. TAYLOR:  Your Honor, my understanding of

13   plaintiffs' statements is they would not bring it up on

14   cross-examination wherein the direct testimony brought that

15   issue to light.  We believe that they have already used

16   this on cross-examination as evidenced by the examination

17   of defendants' expert witness during expert discovery.

18             If plaintiffs will represent that they do not

19   intend to use this on cross-examination, we believe that

20   that would resolve the issue.

21             THE COURT:  Well, I guess we'll do a little

22   mediation here on the call today.

23             Plaintiffs, do you understand what he is saying?

24   And is there something you think you can agree with them about?

25             MR. COOK:  We do.  I believe that it's difficult

1    for us to agree there is no circumstance under which the

2    agreement would be appropriately used on cross-examination

3    because we don't know what their expert is going to offer on

4    direct.

5              Now, I believe Your Honor stated our position

6    accurately, and unless they affirmatively make a statement

7    to which the agreement is relevant, we have no intention of

8    affirmatively relying on the agreement, and we have no

9    intention of cross-examining their expert on the agreement

10   unless the expert goes in a direction that makes the

11   agreement particularly relevant.

12             I mean, one other thing I would add to this.

13   The defendants are asking for a broad "we'll never use

14   any agreement with any of the settling defendants" type of

15   representation, but the defendants have the complete

16   unredacted version of all but two settlement agreements in

17   this case.  So even to the extent that they are asking for,

18   for this representation, we think that that is necessarily

19   overbroad because it goes well beyond the settlement

20   agreements that are at issue in this dispute.

21             So I guess to sum up, we have no intention of

22   using these agreements, but we can't make a definitive

23   representation we will not use it on cross-examination

24   without knowing what their expert is going to say in his

25   affirmative testimony.

1            THE COURT:  So if their expert says something in

2    their affirmative testimony that contradicts the fact that

3    there is an agreement at all, that is the kind of thing that

4    you might think would be a scenario that you might want to

5    bring it up?  I'm trying to understand.

6            MR. COOK:  Yes, Your Honor.  We also cannot

7    see a scenario where this would be relevant or at least we

8    cannot see a likely or probable scenario where we would need

9    to bring this up.  We simply don't know what their expert is

10   going to say, so we can't get them an unequivocal statement

11   we will never use the document on cross-examination, but

12   we view this as an extremely unlikely possibility that the

13   agreement would be relevant.  The defendants are simply

14   asking for an unequivocal statement when we don't know what

15   facts they're going to try to introduce.

16           THE COURT:  Understood.

17           All right.  Let's have the moving defendant have

18   the very last word about why plaintiffs' representation on

19   the call today isn't good enough.

20           MR. TAYLOR:  Yes, Your Honor.  We believe that

21   plaintiffs do know what our experts are going to say because

22   the expert's testimony is limited by the disclosure that

23   they have made in their reports.  So we don't accept that

24   there is some unknown realm within where they can't predict

25   what is going to be relevant or not.

1          Your Honor, we also, in response to the point

2     plaintiff raised, want to again point out that paragraph

3     7(b) of the protective order governs the disclosure of

4     commercially sensitive information, and provides it can be

5     disclosed to outside counsel for defendants, I don't think

6     this is something where Mylan's information is being

7     provided to its competitors.  The protective order

8     specifically allows that when competitively sensitive

9     information is submitted as part of a discovery response

10    such as a request for production here, that that information

11    can be provided to outside counsel for defendant.

12          THE COURT:  Well, I will tell the parties what

13    I'm thinking, and we will probably put an oral order on the

14    docket this afternoon just to make this clear.  But what I'm

15    thinking I'm going to do is this:

16          I'm going to deny the request to have the

17    unredacted version of the document be produced to the moving

18    defendant.

19          We do have a court reporter here with me today,

20    it's Mr. Gaffigan; and if it turns out at trial that

21    plaintiffs somehow raise the argument, which they have

22    told me they're not going to do on the phone today, that all

23    of these settlements with the defendants in this case are

24    somehow relevant to secondary considerations of

25    nonobviousness -- which, by the way, I think would be very

1    unlikely to be persuasive to Judge Stark given his knowledge

2    and experience with ANDA cases.  If that were, however, to

3    happen, that moving defendant should have a transcript of

4    this call; and at that point, plaintiffs should have to

5    immediately produce the unredacted version.

6            So that is my inclination.  It would be to

7    outside counsel's eyes only.  I don't know how that would

8    then help them at trial.  I really can't imagine the

9    scenario where this is likely to occur, but that is what I'm

10   inclined to do, and I will put a ruling on the docket later

11   today.

12           Is there anything else from the moving

13   defendants that they want to say in response to that?

14           MR. TAYLOR:  Yes, Your Honor.  I believe the

15   one issue that would still be outstanding as referenced by

16   Mylan's counsel was the IPR agreement.  As referenced in the

17   letter, we believe that under our statement of contracts

18   that writings that are part of the same transaction are

19   interpreted together and that the IPR agreement should also

20   be produced even if portions such as a payment were to be

21   redacted pursuant to the Court's Order.

22           THE COURT:  That will also be denied.

23           MR. TAYLOR:  Yes, Your Honor.

24           THE COURT:  Is there anything else from the

25   plaintiffs?

1          MR. COOK:  No, Your Honor.  Thank you.

2          THE COURT:  Is there anything else from Mylan?

3          MR. FLORENCE:  No.  Thank you, Your Honor.

4          THE COURT:  Thank you, counsel, for a very well

5   argued dispute.  You can look forward to the order being

6   placed on the docket later today.

7          Have a great afternoon.  Quit worrying about

8   discovery disputes and get ready for trial, because it's

9   coming up soon.

10          MR. TAYLOR:  Yes, Your Honor.

11          THE COURT:  Take care.

12          (Telephone conference ends at 1:35 p.m.)

13

14          I hereby certify the foregoing is a true and accurate
    transcript from my stenographic notes in the proceeding.

15

16                          /s/ Brian P. Gaffigan
                           Official Court Reporter
17                           U.S. District Court

18

19

20

21

22

23

24

25