**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| BRISTOL-MYERS SQUIBB COMPANY and PFIZER INC., <br><br> Plaintiffs, <br><br> v. <br><br> AUROBINDO PHARMA USA INC. and AUROBINDO PHARMA LTD., <br><br> Defendants. | C.A. No. 17-cv-374-LPS (CONSOLIDATED) |

**PLAINTIFFS' OPENING POST-TRIAL BRIEF ON
SUNSHINE LAKE PHARMA CO., LTD. & HEC PHARM USA INC.'S INFRINGEMENT**

Dated: December 20, 2019

*Of Counsel:*

William F. Lee (admitted *pro hac vice*)
Kevin S. Prussia (admitted *pro hac vice*)
Andrew J. Danford (admitted *pro hac vice*)
Timothy A. Cook (admitted *pro hac vice*)
WILMER CUTLER PICKERING
   HALE AND DORR LLP
60 State Street
Boston, MA 02109
Tel: (617) 526-6000
Fax: (617) 526-5000

Amy K. Wigmore (admitted *pro hac vice*)
William G. McElwain (admitted *pro hac vice*)
Heather M. Petruzzi (admitted *pro hac vice*)
WILMER CUTLER PICKERING
   HALE AND DORR LLP
1875 Pennsylvania Avenue NW
Washington, DC 20006
Tel: (202) 663-6000
Fax: (202) 663-6363

Joseph J. Farnan, Jr. (Bar No. 100245)
Brian E. Farnan (Bar No. 4089)
Michael J. Farnan (Bar No. 5165)
FARNAN LLP
919 N. Market Street, 12th Floor
Wilmington, DE 19801
Tel: (302) 777-0300
Fax: (302) 777-0301
farnan@farnanlaw.com
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

*Counsel for Plaintiffs Bristol-Myers Squibb Company and Pfizer Inc.*

# TABLE OF CONTENTS

I.      Nature & Stage of the Proceedings ..................................................1

II.     Summary of the Argument .............................................................1

III.    Statement of Facts.........................................................................3

        A.    '945 Patent .........................................................................3

        B.    Claim Construction ..............................................................4

IV.     Sunshine Lake's ANDA Products Will Infringe the '945 Patent's
        Asserted Claims............................................................................4

        A.    Infringement Legal Standard ................................................4

        B.    Common Technical Background .............................................5

              1.    Technical Experts.......................................................5

              2.    Crystalline and Amorphous Materials in
                    Pharmaceutical Compositions.....................................6

              3.    Crystallization and Particle Size ................................6

              4.    X-Ray Powder Diffraction (XRPD)...........................7

        C.    Sunshine Lake's ANDA Products Contain Crystalline
              Apixaban Particles ..............................................................8

              1.    Dr. Atwood's XRPD Testing Shows the Presence of
                    Crystalline Apixaban Particles in Sunshine Lake's
                    ANDA Products ..........................................................8

              2.    Sunshine Lake's Documents and Witness Testimony
                    Confirm that Crystalline Apixaban Particles Can Form
                    in Sunshine Lake's ANDA Products .......................10

              3.    Dr. Brittain Failed to Undermine Dr. Atwood's Opinion
                    that Crystalline Apixaban is Present in Sunshine Lake's
                    ANDA Products ........................................................11

        D.    The Compositions of the 2.5 mg and 5 mg Sunshine Lake
              ANDA Products Are the Same .............................................13

        E.    The Crystalline Apixaban Particles in Sunshine Lake's
              ANDA Products Have a $D_{90}$ of Equal to or Less than 89
              Microns ...........................................................................14

              1.    Sunshine Lake's ANDA Products Contain Crystalline
                    Apixaban Particles ...................................................14

              2.    Sunshine Lake's Manufacturing Process Necessarily
                    Limits the Crystalline Apixaban Particle Size to Well
                    Below 89 Microns....................................................16

V.      Conclusion & Remedies ..............................................................18

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Abbott Labs. v. TorPharm, Inc.*,
   300 F.3d 1367 (Fed. Cir. 2002)...............................................................................4

*Acorda Therapeutics Inc. v. Mylan Pharm. Inc.*,
   817 F.3d 755 (Fed. Cir. 2016).................................................................................4

*Bayer AG v. Elan Pharm. Research Corp.*,
   212 F.3d 1241 (Fed. Cir. 2000)...........................................................................4, 5

*Bristol-Myers Squibb Co. v. Mylan Pharm. Inc.*,
   C.A. No. 09-651-LPS, 2013 WL 12322088 (D. Del. Oct. 17, 2013) .......................9

*Martek Biosciences Corp. v. Nutrinova, Inc.*,
   579 F.3d 1363 (Fed. Cir. 2009)..............................................................................17

**Federal Statutes**

35 U.S.C. § 271(a) ........................................................................................................4

35 U.S.C. § 271(e) ...................................................................................................4, 18

35 U.S.C. § 285............................................................................................................19

## TABLE OF ABBREVIATIONS

| Abbreviation | Description |
|---|---|
| '208 Patent | U.S. Patent No. 6,967,208 (JTX-1) |
| '945 Patent | U.S. Patent No. 9,326,945 (JTX-2) |
| ANDA | Abbreviated New Drug Application |
| Asserted Claims | For the '945 Patent, claims 21 and 22. |
| FDA | United States Food and Drug Administration |
| BMS | Bristol-Myers Squibb Co. |
| Pfizer | Pfizer, Inc. |
| Plaintiffs | BMS and Pfizer |
| Sigmapharm | Sigmapharm Laboratories, LLC |
| Sunshine Ltd. | Sunshine Lake Pharma Co., Ltd. |
| HEC | HEC Pharm USA Inc. |
| Sunshine Lake | Sunshine Ltd. and HEC |
| Unichem | Unichem Laboratories, Ltd. |
| UF | Uncontested Facts (D.I. 672, Ex. 1) |
| POSA | Person of ordinary skill in the art for the '945 Patent, a POSA would have the characteristics described at UF ¶ 31 as of February 24, 2011. |
| FOF | Plaintiffs' Proposed Findings of Fact |
| XRPD | X-ray Powder Diffraction |

## I.    Nature & Stage of the Proceedings

Plaintiffs Bristol-Myers Squibb Co. and Pfizer Inc. filed patent infringement actions against 25 generic pharmaceutical companies that challenged the patents protecting Plaintiffs' novel, blockbuster anticoagulant, Eliquis®.  U.S. Patent No. 6,967,208 (the "'208 Patent") specifically claims apixaban, which is the active chemical compound in Eliquis®, and U.S. Patent No. 9,326,945 (the "'945 Patent") covers certain compositions containing apixaban.  Plaintiffs' claims against 22 of those companies were resolved before trial.  Between October 23, 2019, and November 13, 2019, the Court held a trial for Plaintiffs' claims against the remaining three.  This memorandum is Plaintiffs' opening post-trial brief on their infringement claims against Sunshine Lake Pharma Co., Ltd. ("Sunshine Ltd.") and HEC Pharm USA Inc. ("HEC") (collectively, "Sunshine Lake").  It is accompanied by Plaintiffs' proposed findings of fact on their infringement claims against Sunshine Lake ("FOF").  "Sunshine Lake's ANDA products" refers to the 2.5 mg and 5 mg apixaban oral tablets that are the subject of ANDA No. 209994 ("Sunshine Lake's ANDA").  FOF ¶ 5.  Because Sunshine Lake's ANDA contained a paragraph IV certification for the '945 Patent but not the '208 Patent, the only asserted claims against Sunshine Lake are claims 21 and 22 of the '945 Patent.  FOF ¶¶ 5, 7.

## II.    Summary of the Argument

Plaintiffs have met their burden of proving by a preponderance of the evidence that Sunshine Lake's ANDA products will infringe asserted claims 21 and 22 of the '945 Patent.  Sunshine Lake contests only two claim limitations: whether its ANDA products contain crystalline apixaban particles and whether those crystalline apixaban particles have a $D_{90}$ particle distribution less than 89 microns.  Both limitations are satisfied.

Plaintiffs' expert, Dr. Jerry Atwood, performed appropriately sensitive x-ray powder diffraction ("XRPD") tests that identified crystalline apixaban particles in Sunshine Lake's tablets.  Sharp peaks in Dr. Atwood's XRPD testing of Sunshine Lake's ANDA products corresponding with known peaks for crystalline apixaban establish the presence of crystalline apixaban particles in those products.  Dr. Atwood's testing is further supported and confirmed by statements and testing in Sunshine Lake's ANDA and in its internal research documents showing that crystalline apixaban particles can form in Sunshine Lake's tablets.

The testimony and testing of Sunshine Lake's expert, Dr. Harry Brittain, not only failed to undermine, but in fact confirmed, the presence of crystalline apixaban particles in Sunshine Lake's ANDA products.  Dr. Brittain's testing, which was several orders of magnitude less sensitive than Dr. Atwood's, was insufficiently sensitive to detect the presence of crystalline apixaban particles.  Moreover, Dr. Brittain conceded that Dr. Atwood's testing of Sunshine Lake's ANDA products showed an indisputable, reproducible peak at 12.4 degrees, which corresponds to a characteristic peak of crystalline apixaban.  Dr. Brittain's attempt to attribute that peak to another component in Sunshine Lake's ANDA products was definitively disproven by Dr. Atwood's testing, which revealed that the excipient material to which Dr. Brittain attributed the 12.4 degree peak was not what Dr. Brittain believed it to be, nor is it one of the ingredients in Sunshine Lake's ANDA products.

The record evidence also establishes that Sunshine Lake's ANDA products meet the particle-size limitation set forth in the asserted claims.  Sunshine Lake attempted to design around the asserted claims by making a so-called "amorphous dispersion," but as evidenced by the presence of crystalline apixaban particles in Sunshine Lake's ANDA products, this design-around effort was unsuccessful.  In particular, Sunshine Lake's manufacturing steps ensure that

– 2 –

the crystalline apixaban particles that form are well within the claimed particle size limitation. More specifically, the constraints imposed by Sunshine Lake's manufacturing process— including the small amount of apixaban relative to other components, the quick drying, and limitations on the ability of the apixaban to move and interact with other particles to form larger crystals—ensure that the crystalline apixaban particles in Sunshine Lake's ANDA products fall substantially below the claimed threshold of a $D_{90}$ less than or equal to 89 microns.

## III.   Statement of Facts

### A.   '945 Patent

The '945 Patent is titled "Apixaban Formulations" and is directed to solid pharmaceutical compositions of apixaban.  FOF ¶ 9; '945 Patent (JTX-2); Tr. 323:4-5 (Atwood).  Claim 12, the independent claim from which asserted Claims 21 and 22 depend, FOF ¶ 7, reads:

> A solid pharmaceutical composition comprising a therapeutically effective amount of apixaban and a pharmaceutically acceptable diluent or carrier,
>> wherein apixaban comprises crystalline apixaban particles,
>> wherein the crystalline apixaban particles have a $D_{90}$ equal to or less than about 89 µm, and
>> wherein, as measured using a USP Apparatus 2 at a paddle rotation speed of 75 rpm in 900 ml, of a dissolution medium at 37° C., at least 77 wt % of apixaban in the pharmaceutical composition dissolves within 30 minutes in the dissolution medium, and the dissolution medium is 0.05 M sodium phosphate at a pH 6.8 containing 0.05% sodium lauryl sulfate.

'945 Patent (JTX-2) at 10:13-27; FOF ¶¶ 8-11.  Claims 21 and 22 further limit that the compositions comprise 2.5 or 5 mg of apixaban, respectively.  '945 Patent (JTX-2) at 10:46-49; FOF ¶ 7.

### B.      Claim Construction

The Court construed "apixaban particles have a $D_{90}$," to have its plain and ordinary

meaning, which is that 90% of the volume of the crystalline apixaban particles have a diameter

of less than or equal to 89 microns.  FOF ¶ 14.  The asserted claims do not require measurement

of apixaban particle size by any particular method nor measuring the starting API.  FOF ¶ 15.

The parties agreed that all other terms, including "wherein apixaban comprises crystalline

apixaban particles," would have their plain and ordinary meaning.  FOF ¶ 16.  During trial, the

parties' experts agreed that the plain and ordinary meaning of that limitation covers any amount

of crystalline apixaban that can be detected in the pharmaceutical composition.  FOF ¶ 17.

## IV.   Sunshine Lake's ANDA Products Will Infringe the '945 Patent's Asserted Claims

### A.      Infringement Legal Standard

The "infringement inquiry" under 35 U.S.C. § 271(e)(2)(A) is "whether, if a particular

drug were put on the market, it would infringe the relevant patent."  *Acorda Therapeutics Inc. v.*

*Mylan Pharm. Inc.*, 817 F.3d 755, 760 (Fed. Cir. 2016).  This determination is based on

consideration of all the relevant evidence, including the ANDA filing, other materials submitted

by the accused infringer to the FDA, and other evidence provided by the parties.  *Abbott Labs. v.*

*TorPharm, Inc.*, 300 F.3d 1367, 1373 (Fed. Cir. 2002).

A patent claim is infringed when a person "without authority makes, uses, offers to sell,

or sells any patented invention, within the United States or imports into the United States any

patented invention during the term of the patent."  35 U.S.C. § 271(a).  A patent claim is literally

infringed if each limitation of the asserted claim is literally practiced by the accused product.

*See, e.g.*, *Bayer AG v. Elan Pharm. Research Corp.*, 212 F.3d 1241, 1247 (Fed. Cir. 2000).

Where infringement is contested, Plaintiffs have the burden of proving infringement by a preponderance of the evidence. *Id.*

### B.      Common Technical Background

This common background addresses issues and principles relevant to both Sigmapharm and Sunshine Lake.

### 1.      Technical Experts

**Dr. Jerry Atwood** is Plaintiffs' expert on infringement by Sigmapharm and Sunshine Lake. Dr. Atwood is a Professor of Chemistry at the University of Missouri, and he has worked on the preparation and analysis of pharmaceutical formulations for about 40 years. FOF ¶ 21. He performed XRPD testing and analyzed Sunshine Lake's and Sigmapharm's manufacturing processes to determine whether their ANDA products contain crystalline apixaban particles and whether those particles have a $D_{90}$ of less than or equal to 89 microns. FOF ¶¶ 45-47, 50, 69-70.

**Dr. Harry Brittain** is Sunshine Lake's expert with respect to the '945 Patent infringement analysis. FOF ¶ 22. He currently operates his own consultancy and has experience in both academia and the pharmaceutical industry. FOF ¶ 22.

**Dr. Michael Zaworotko** is one of Sigmapharm's experts with respect to the '945 Patent infringement analysis. FOF ¶ 23.[1] He is a professor of crystal engineering at the University of Limerick. FOF ¶ 23.

---

[1] Although Dr. Zaworotko was not retained by Sunshine Lake, Sunshine Lake's expert, Dr. Brittain, endorsed Dr. Zawortoko's testimony with respect to background issues including crystal structure and XRPD. FOF ¶ 36.

2. **Crystalline and Amorphous Materials in Pharmaceutical Compositions**

Pharmaceutical compositions are made up of an active pharmaceutical ingredient (or API) that treats a disease and one or more excipients. FOF ¶ 24. Here the API is apixaban. *Id.* Excipients are components that serve some function other than treating a disease. *Id.* The API and excipients in a pharmaceutical composition can have different physical forms. Tr. 327:2-327:11 (Atwood); FOF ¶ 44. Crystalline particles are made up of molecules arranged in a long-range order called a crystal lattice or array. FOF ¶ 25. Amorphous materials in contrast lack long-range order. FOF ¶ 26. Crystalline and amorphous forms of a material can coexist in the same pharmaceutical composition, but amorphous substances tend to convert to a crystalline form over time. Amorphous forms are at a higher energy state than crystalline forms, so thermodynamics drives amorphous forms to convert to a lower-energy crystalline form or crystallize. Tr. 328:20-329:13 (Atwood); FOF ¶ 26.

3. **Crystallization and Particle Size**

Two classical models describe the process of crystallization: nucleation and crystal growth. Nucleation occurs when molecules join together in a lower-energy crystal array to form a crystalline particle. FOF ¶ 27. When crystalline particles first form, they are generally on the order of a few nanometers. *Id.* Crystal growth can occur after nucleation. FOF ¶ 28. Once a crystal forms, it will tend to convert surrounding amorphous material as additional molecules join the lower-energy crystal array. *Id.* The parties' experts agree that the classical models of nucleation and crystal growth are valid models. FOF ¶ 31. These models were well known as of 2010 and apply to solid pharmaceutical compositions. FOF ¶ 29.

Aspects of Sigmapharm's and Sunshine Lake's manufacturing processes are similar. Both processes involve attempts to create amorphous dispersions with rapid drying and a small

amount of apixaban relative to other ingredients in the ANDA products.  FOF ¶ 32.  In both

processes, inhibiting molecular mobility of apixaban limits crystal growth.  *Id.*  The excipient

povidone (which is used in both Sunshine Lake's and Sigmapharm's manufacturing processes

and ANDA products) is known to limit crystal growth.  *Id.*

### 4.      X-Ray Powder Diffraction (XRPD)

The experts agree that XRPD is an appropriate method to identify the presence of

crystalline apixaban particles and distinguish between crystalline and amorphous materials.  FOF

¶ 33.  The identity of a material can be determined by visually comparing a portion of its XRPD

pattern to a known reference.  FOF ¶ 34.  Dr. Zaworotko conceded that a single sharp peak in an

XRPD pattern is indicative of crystallinity.  FOF ¶ 36.  And Dr. Brittain testified that Dr.

Zaworotko's explanation of crystal structure and definitions of genuine XRPD peaks are

accurate.  *Id.*  It is not necessary to match all peaks in an XRPD pattern to identify a crystalline

material in a sample.  FOF ¶ 37. [2]

When a material of interest is a small proportion of a sample, a more sensitive XRPD

method may be necessary to detect that minor component.  FOF ¶ 38.  Performing slower scans

by increasing the count time per step increases the sensitivity of an XRPD test.  FOF ¶ 39.  There

is no dispute that increasing count time is an appropriate method to detect components that are a

small portion of a sample.  FOF ¶ 41.

---

[2] The patent claims asserted here are not limited to a specific polymorph and cover any crystalline form.  Moreover, they do not require specific peaks to be present in contrast to the claims at issue in, for example, *Bristol-Myers Squibb Co. v. Mylan Pharm. Inc.*, C.A. No. 09-651-LPS, 2013 WL 12322088, at *3 (D. Del. Oct. 17, 2013).

C.     **Sunshine Lake's ANDA Products Contain Crystalline Apixaban Particles**

1.     **Dr. Atwood's XRPD Testing Shows the Presence of Crystalline Apixaban Particles in Sunshine Lake's ANDA Products**

Plaintiffs have proven by a preponderance of the evidence that Sunshine Lake's ANDA products comprise crystalline apixaban particles.  FOF ¶ 42.  Dr. Atwood's XRPD tests demonstrate that crystalline apixaban particles are present in Sunshine Lake's ANDA products.[3] FOF ¶ 50.  Using scans with count times as long as 1,000 seconds per step, Dr. Atwood tested a sample from Sunshine Lake's 2.5 mg ANDA product.  FOF ¶ 45.  Sunshine Lake's ANDA products contain only 2.5% apixaban.  *Id.*  Long scan times were used so that the test would be sensitive enough to detect small amounts of crystalline apixaban in the Sunshine Lake sample. FOF ¶¶ 38-39, 45.

In his XRPD analysis of Sunshine Lake's sample, Dr. Atwood identified three peaks that are characteristic of crystalline apixaban.  FOF ¶ 46.  Two of the characteristic peaks at 12.3 and 27.1 degrees are listed in the '945 Patent, and the third peak that Dr. Atwood observed at 16.9 degrees matches a peak in his analysis of Sunshine Lake's crystalline apixaban starting API.  *Id.* Dr. Brittain agreed that Dr. Atwood's scans show a reproducible peak at 12.4 degrees, and he agreed that a peak at 12.4 degrees is within the margin of error of a characteristic peak of crystalline apixaban at 12.3 degrees.  FOF ¶ 59.  Dr. Brittain called the peak at 12.4 degrees in Dr. Atwood's XRPD patterns "indisputable."  Tr. 1107:4-9 (Brittain); FOF  ¶ 59.

Based on the three peaks he observed, Dr. Atwood concluded that Sunshine Lake's ANDA products contain crystalline apixaban particles.[4]  FOF ¶ 47.  Dr. Atwood testified that the

---

[3] Dr. Atwood used standard sample preparation methods that would not affect the integrity of the sample.  FOF ¶ 44.

[4] Dr. Atwood did not need to perform a limit of detection study because he was able to detect three characteristic peaks and was not quantifying how much crystalline apixaban is present in Sunshine Lake's ANDA products.  FOF ¶ 49.

four peaks in the '945 Patent that he did not observe were "completely obscur[ed]" by large excipient peaks.  FOF ¶ 48; Tr. 407:22-408:4 (Atwood).



The three peaks Dr. Atwood identified are more than enough to establish that the "comprises crystalline apixaban particles" limitation is met.[5]  Even a single peak is sufficient to demonstrate the presence of crystalline apixaban particles in Sunshine Lake's ANDA products. FOF ¶¶ 36-37; *see also* FOF ¶ 52.  This is confirmed by a representation Sunshine Lake made to the FDA concerning its own ANDA products.  FOF ¶¶ 51-52.  Sunshine Lake's ANDA reports the results of an XRPD analysis Sunshine Lake performed on its 5 mg ANDA product.  *Id.* Based on the presence of a single peak at 17.1 degrees, Sunshine Lake concluded that Form N-1 crystalline apixaban was present.  *Id.*[6]

---

[5] The patent claims asserted here are not limited to a specific polymorph and cover any crystalline form.  Moreover, they do not require specific peaks to be present in contrast to the claims at issue in, for example, *Bristol-Myers Squibb Co. v. Mylan Pharm. Inc.*, C.A. No. 09-651-LPS, 2013 WL 12322088, at *3 (D. Del. Oct. 17, 2013).

[6] Although Sunshine Lake amended its ANDA, this analysis and conclusion remain in the amended ANDA.  FOF ¶ 51.

2.       **Sunshine Lake's Documents and Witness Testimony Confirm that Crystalline Apixaban Particles Can Form in Sunshine Lake's ANDA Products**

Based on the XRPD data mentioned above, Sunshine Lake reported to the FDA that "it can be concluded that the polymorph conversion can consistently occur during the stability of Apixaban tablets."  PTX-846 at HECAPIX001956; Tr. 1013:24-1014:17 (Chen); FOF ¶ 51. After the deposition of Dr. Yong Chen, the Director of Sunshine Lake's Excipient Department, Sunshine Lake submitted an amended ANDA in August 2019 to change certain descriptions related to polymorph conversion and the XRPD testing.  FOF ¶ 51.  But the ultimate conclusion that "conversion can consistently occur" remains in Sunshine Lake's amended ANDA.  *Id.*

Sunshine Lake's internal testing and analysis also show that the amorphous apixaban in its ANDA products can convert to crystalline form N-1.  FOF ¶ 54.  A presentation from 2015 at HEC, which is affiliated with Sunshine Lake,[7] titled "Discussion on the Crystalline Form of Apixaban Tablet U.S." addresses Sunshine Lake's research on conversion of amorphous apixaban to crystalline apixaban in Sunshine Lake's tablets.  Tr. 1009:14-19 (Chen); FOF ¶ 54. Dr. Chen testified that the presentation states "during the stability process, amorphous apixaban will partially convert to crystalline form N.  The longer, the higher the conversion ratio."  Tr. 1010:3-10 (Chen); FOF ¶ 54.  He further confirmed that crystalline form N refers to crystalline form N-1.  *Id.*  Dr. Chen admitted that amorphous apixaban "can convert" to crystalline form, Tr. 1010:23-1011:1 (Chen), and that the presentation further states that "in the end, all will convert to crystalline N."  Tr. 1011:4-14 (Chen); FOF ¶ 54.

Sunshine Lake may now claim that its original ANDA filing contained some errors, but the XRPD data showing conversion to the N-1 form of crystalline apixaban and the conclusion

---

[7] Sunshine Ltd. is the parent corporation of HEC, its subsidiary.  UF ¶ 7.

that "conversion can consistently occur" remain in the current ANDA and are consistent with Sunshine Lake's internal documents.  FOF ¶¶ 51-54.

### 3.    Dr. Brittain Failed to Undermine Dr. Atwood's Opinion that Crystalline Apixaban is Present in Sunshine Lake's ANDA Products

The opinions of Sunshine Lake's expert, Dr. Brittain, not only failed to undermine, but in fact confirmed, the presence of crystalline apixaban in Sunshine Lake's ANDA products.  First, Dr. Brittain performed his own XRPD tests that allegedly show no crystalline apixaban, but those tests were insufficiently sensitive.  Second, Dr. Brittain confirmed there is an indisputable peak at 12.4 degrees in Dr. Atwood's XRPD testing of Sunshine Lake's ANDA products that cannot reasonably be attributed to any ingredient other than crystalline apixaban.

#### (a)    Dr. Brittain's XRPD Tests Were Insufficiently Sensitive

Dr. Brittain agreed that Dr. Atwood's approach of using slow scans to increase the sensitivity of his XRPD tests was reasonable given the small percentage of apixaban in Sunshine Lake's ANDA product.  FOF ¶ 55.  But Dr. Brittain did not attempt to replicate Dr. Atwood's method by using slow scans.  *Id.*  For his tests, Dr. Brittain performed five fasts scans, each with a count time of 0.3 seconds, and then averaged the data together.  FOF ¶ 56.  However, as Dr. Brittain conceded, his scan averaging approach results in an equivalent count time of 1.75 seconds.  *Id.*  Dr. Brittain admitted that Dr. Atwood's count time of 1,000 seconds is "a lot bigger than 1.75," Tr. 1114:14-20 (Brittain)—indeed, Dr. Atwood's testing was several orders of magnitude more sensitive.  FOF ¶ 56.  Dr. Brittain's XRPD tests were insufficiently sensitive to detect crystalline apixaban particles given the low amount of apixaban in Sunshine Lake's ANDA products.  FOF ¶¶ 55-57.

Dr. Brittain also relied on testing reportedly from Sunshine Lake that he received from counsel.  FOF ¶ 58.  But Dr. Brittain did not know anything about that testing.  He took the

results at face value without talking to anyone who conducted testing or even learning what settings were used for the scans.  *Id.*  Sunshine Lake provided no evidence that those tests are reliable.

The XRPD testing Dr. Brittain relied on is not comparable to Dr. Atwood's and cannot undermine the evidence that Sunshine Lake's ANDA products contain crystalline apixaban particles.

### (b)      *Dr. Brittain Confirmed There Is a Genuine Peak at 12.4 Degrees in Dr. Atwood's Analysis of Sunshine Lake's ANDA Products*

A genuine crystalline apixaban peak is present at 12.4 degrees in Dr. Atwood's XRPD tests of Sunshine Lake's ANDA products.  Dr. Brittain conceded that Dr. Atwood's XRPD tests show a peak at 12.4 degrees, which is within 0.1 degrees of the characteristic peak listed in the '945 Patent at 12.3 degrees.  FOF ¶ 59.  Dr Brittain described the characteristic peak Dr. Atwood observed at 12.4 degrees as "reproducible" and "indisputable."  Tr. 1106:21-1107:9 (Brittain); FOF ¶ 59.

Dr. Brittain initially claimed that the peak at 12.4 degrees was caused by lactose anhydrous, one of the excipients in Sunshine Lake's ANDA product.  FOF ¶ 60.  But that theory was definitively disproven.  FOF ¶ 61.  Dr. Atwood tested Dr. Brittain's alleged sample of lactose anhydrous and found that it was not lactose anhydrous but, instead, contained lactose monohydrate.  *Id.*  Dr. Brittain conceded as much.  *Id.*

Sunshine Lake's ANDA products do not contain lactose monohydrate.  FOF ¶ 63. Accordingly, the indisputable peak Dr. Atwood found at 12.4 degrees cannot be attributed to lactose monohydrate, nor to any form of lactose in Sunshine Lake's ANDA product.  FOF ¶ 64.

His initial lactose-anhydrous theory having been disproven by Dr. Atwood, Dr. Brittain attempted to change his explanation by suggesting that the lactose anhydrous in Dr. Atwood's

sample had converted to lactose monohydrate.  FOF ¶ 62.  Dr. Brittain suggested there must have been conversion to lactose monohydrate because the peak at 12.4 degrees purportedly was first found a few months after Dr. Atwood's first scan.  *Id.*  But that theory is also undermined by the evidence.  Dr. Atwood first tested a sample of Sunshine Lake's ANDA product on October 31, 2018.  FOF ¶ 65.  The peak at 12.4 degrees was not visible in the very first scan because it used a count time of six seconds and was therefore too fast to detect material that is no more than 2.5% of the sample.  *Id.*  The first slow scan that Dr. Atwood performed that revealed the peak at 12.4 degrees was a week later on November 7, 2018.  *Id.*  Dr. Brittain initially claimed that Dr. Atwood did not see a peak at 12.4 degrees in November 2018, but ultimately agreed that the November 7, 2018 scan shows a peak at 12.4 degrees.  FOF ¶ 62.  Sunshine Lake has offered no evidence that lactose anhydrous would convert to lactose monohydrate in a week, and Dr. Atwood offered an opinion to the contrary.  FOF ¶ 65.

Dr. Brittain's conflicting testimony and ad hoc theories fail to establish that the peak at 12.4 degrees in Sunshine Lake's ANDA product is attributable to anything other than crystalline apixaban.

### D.     The Compositions of the 2.5 mg and 5 mg Sunshine Lake ANDA Products Are the Same

Dr. Atwood's conclusion that Sunshine Lake's 2.5 mg ANDA products contain crystalline apixaban particles applies equally to Sunshine Lake's 5 mg ANDA products.  The manufacturing processes for Sunshine Lake's 2.5 mg and 5 mg ANDA products are the same, and Dr. Brittain agrees that the compositions of the Sunshine Lake's 2.5 mg and 5 mg ANDA products are the same.  FOF ¶ 43.  Moreover, Sunshine Lake's own testing revealed the presence of crystalline apixaban in a Sunshine Lake 5 mg ANDA product.  FOF ¶¶ 54, 43.

**E.      The Crystalline Apixaban Particles in Sunshine Lake's ANDA Products Have a $D_{90}$ of Equal to or Less than 89 Microns**

The record evidence establishes that Sunshine Lake's ANDA products meet the particle size limitation set forth in the asserted claims.  Sunshine Lake attempted to design around the asserted claims by making a so-called "amorphous dispersion."  While Sunshine Lake contends that its manufacturing process avoids the formation of crystalline apixaban particles, the overwhelming weight of the evidence is to the contrary.  As discussed above, Dr. Atwood's XRPD testing revealed the presence of crystalline apixaban particles in Sunshine Lake's ANDA products, and this evidence is bolstered by admissions from Sunshine Lake's internal documents, as well as admissions from their expert, Dr. Brittain.  But the manufacturing steps Sunshine Lake uses to make its ANDA products, while insufficient to avoid the formation of crystalline apixaban particles altogether, ensure that the apixaban particles will not come close to approaching the $D_{90}$ particle size threshold in the asserted claims.  In essence, Sunshine Lake's attempted design around ensured that its ANDA products fall squarely within the claims and practice the critical particle size limitation.

**1.      Sunshine Lake's ANDA Products Contain Crystalline Apixaban Particles**

Sunshine Lake's first line of defense with respect to the particle size limitation is to contend that its ANDA products do not contain crystalline apixaban *particles* at all.  Sunshine Lake suggests that because its manufacturing process involves the preparation of an amorphous dispersion, the apixaban will be bound to the excipients and will not exist in the form of discrete particles.  FOF ¶ 74.  Sunshine Lake's "no apixaban particles" theory is, at best, simply a repackaging of its contention that its products do not contain crystalline apixaban.

As Plaintiffs' expert, Dr. Myerson, testified, all crystals are particles. FOF ¶ 25. Sunshine Lake assumes that the apixaban molecules in its ANDA products remain completely dissolved in a solid solution and do not exist separate from the so-called amorphous dispersion. But, as explained in detail above, Dr. Atwood's testing and Sunshine Lake's own documents disprove that premise. The presence of sharp peaks in the XRPD testing performed by both Dr. Atwood and Sunshine Lake reveals that crystalline apixaban can, and does, appear in Sunshine Lake's ANDA products. These peaks, which correspond with characteristic peaks of crystalline apixaban, reveal that crystalline apixaban particles are present as particles which are separate and distinct from other components, such as povidone, in Sunshine Lake's products. FOF ¶¶ 46-47. The extent to which crystalline apixaban particles agglomerate or combine with other materials in Sunshine Lake's ANDA products is irrelevant. The '945 Patent's specification makes clear that the particle size analysis applies to individual apixaban particles that are present within the agglomerate. FOF ¶¶ 13, 75.

Sunshine Lake's expert based his assumption that Sunshine Lake's ANDA products contain "amorphous dispersions and not discrete particles" on a literature reference that is distinguishable and irrelevant. FOF ¶ 74. Specifically, Dr. Brittain relied on a patent application by a third party, Cadila Healthcare, Ltd. (DTX-503), concerning amorphous forms of apixaban to suggest that Sunshine Lake's ANDA products would not contain discrete apixaban particles. *Id.* But as Dr. Brittain conceded on cross-examination, that patent application does not describe Sunshine Lake's process, and Sunshine Lake, in fact, uses a different process than the one disclosed in the Cadila's patent application. *Id.* Accordingly, Cadila's patent application is irrelevant and reveals nothing about the contents of Sunshine Lake's ANDA products. By

– 15 –

contrast, XRPD testing conducted by Dr. Atwood and internally at Sunshine Lake revealed the presence of crystalline apixaban particles in those products.

### 2. Sunshine Lake's Manufacturing Process Necessarily Limits the Crystalline Apixaban Particle Size to Well Below 89 Microns

Sunshine Lake's suggestion that its particles do not satisfy the $D_{90}$ particle size limitation is equally without merit. Dr. Atwood analyzed Sunshine Lake's manufacturing process and explained that the particle size of crystalline apixaban particles in Sunshine Lake's ANDA products could not come close to the 89 micron $D_{90}$ particle size threshold in the asserted claims due to constraints imposed by that process. FOF ¶ 73. In particular, Sunshine Lake's manufacturing process limits the growth of crystalline apixaban particles in part by using a polymer povidone, which is a well-known nucleation and crystallization inhibitor. FOF ¶ 67. Sunshine Lake starts by dissolving crystalline apixaban form N-1 in a solution with povidone. FOF ¶ 68. That solution of polymer and apixaban is then sprayed onto a bed of excipient particles where the droplets rapidly dry. *Id.*

As Dr. Atwood explained in his testimony, three factors limit the size of the apixaban particles in Sunshine Lake's ANDA products. First, rapid drying leaves the apixaban uniformly distributed. FOF ¶ 69. The apixaban will not have an opportunity during rapid drying to coalesce and crystallize into large particles. Second, apixaban makes up only 2.5% of Sunshine Lake's ANDA product, so the apixaban regions will be small relative to the polymer and other excipients. FOF ¶ 70. When crystals first form, they are on the order of nanometers in size. FOF ¶ 27. And 89 microns is 89,000 nanometers. *Id.* That means the apixaban crystals would have to grow four or five orders of magnitude to even approach the scale of 89 microns. Because the apixaban is only 2.5 % of the tablet, the apixaban regions are too small to support the growth of crystalline apixaban particles that large. FOF ¶ 70.

Third, povidone and other excipients will keep the crystalline apixaban regions separated. FOF ¶ 71.  The apixaban regions dispersed in the polymer and other excipients cannot come into contact to form larger crystalline apixaban particles.  As Dr. Brittain testified, the polymer povidone "is a well-known nucleation and crystallization inhibitor."  Tr. 1098:12-14 (Brittain). And he agreed that Dr. Atwood's hypothesis (that crystalline apixaban particles form and are immobilized in povidone) is plausible if there were not experimental evidence to the contrary. FOF ¶¶ 30, 71.  But the only experimental evidence Dr. Brittain cited to the contrary was (a) the theory that Sunshine Lake's products contain no crystalline apixaban, which is disproven by the evidence discussed above; and (b) the Cadila Healthcare patent (DTX-503), which is distinguishable and irrelevant for the reasons explained above.  FOF ¶ 71.  Accordingly, when crystalline apixaban particles form in Sunshine Lake's ANDA products, which has been proven to occur, surrounding povidone will limit further crystallization to the apixaban in each small domain. FOF ¶¶ 30, 71.

Notably, Sunshine Lake's expert, Dr. Brittain, did not offer any opinion or explanation as to how crystalline apixaban particles in Sunshine Lake's ANDA product could conceivably exceed the 89 micron $D_{90}$ threshold in view of those constraints.  FOF ¶ 72.  Instead, Sunshine Lake's defense depends on its assertion that Plaintiffs were required to conduct a precise $D_{90}$ calculation in order to prove infringement.  But that is not the law.  Infringement can be shown by "any method of analysis that is probative of the fact of infringement," and, in some cases, "circumstantial evidence may be sufficient."  *Martek Biosciences Corp. v. Nutrinova*, *Inc.*, 579 F.3d 1363, 1372 (Fed. Cir. 2009) ("As detailed above, Martek presented testimony from two experts, each of whom conceptually analyzed the accused process and testified that it must meet the functional claim limitation based on the composition of Lonza's culture medium and the

known effects of chloride concentration on stainless steel corrosion."). Here, Plaintiffs offered ample evidence supporting the satisfaction of the disputed claim limitations, including XRPD evidence establishing the existence of crystalline apixaban particles in Sunshine Lake's ANDA products and a detailed explanation as to how the specific steps of Sunshine Lake's manufacturing process necessarily prevent those particles from exceeding the claimed particle size threshold. That evidence is more than sufficient to meet their burden of proving infringement by a preponderance of the evidence.

## V.    Conclusion & Remedies

For the reasons above, Plaintiffs respectfully request that the Court find that Sunshine Lake's making, using, offering to sell, or selling in the United States, or importing into the United States of Sunshine Lake's ANDA products will literally infringe the asserted claims of the '945 Patent and, therefore, that the submission of Sunshine Lake's ANDA infringes those claims under 35 U.S.C. § 271(e)(2)(A). Plaintiffs further request that the Court enter an order pursuant to 35 U.S.C. § 271(e)(4)(A) providing that the effective date of any approval of Sunshine Lake's ANDA shall be a date which is not earlier than the expiration date of the '945 Patent, including any extensions and/or additional periods of exclusivity to which Plaintiffs are or become entitled, and an order permanently enjoining Sunshine Lake, its affiliates, subsidiaries, and each of its officers, agents, servants and employees and those acting in privity or concert with them, from making, using, offering to sell, or selling in the United States, or importing into the United States Sunshine Lake's ANDA products until after the latest expiration

date of the '945 Patent, including any extensions and/or additional periods of exclusivity to

which Plaintiffs are or become entitled.[8]

---

[8] Plaintiffs' complaint also seeks any appropriate relief under 35 U.S.C. § 285.  *See* Compl., D.I. 1 in C.A. No. 17-380-LPS, Prayer for Relief ¶ 5.  No party has yet made a motion for fees, and, at this point, that issue is premature.  Plaintiffs may seek fees as permitted by the Federal Rules.

Dated: December 20, 2019

*Of Counsel:*

William F. Lee (admitted *pro hac vice*)
Kevin S. Prussia (admitted *pro hac vice*)
Andrew J. Danford (admitted *pro hac vice*)
Timothy A. Cook (admitted *pro hac vice*)
WILMER CUTLER PICKERING
  HALE AND DORR LLP
60 State Street
Boston, MA 02109
Tel: (617) 526-6000
Fax: (617) 526-5000

Amy K. Wigmore (admitted *pro hac vice*)
William G. McElwain (admitted *pro hac vice*)
Heather M. Petruzzi (admitted *pro hac vice*)
WILMER CUTLER PICKERING
  HALE AND DORR LLP
1875 Pennsylvania Avenue NW
Washington, DC 20006
Tel: (202) 663-6000
Fax: (202) 663-6363

Respectfully submitted,

FARNAN LLP

/s/ Michael J. Farnan
Joseph J. Farnan, Jr. (Bar No. 100245)
Brian E. Farnan (Bar No. 4089)
Michael J. Farnan (Bar No. 5165)
919 N. Market Street, 12th Floor
Wilmington, DE 19801
Tel: (302) 777-0300
Fax: (302) 777-0301
farnan@farnanlaw.com
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

*Counsel for Plaintiffs Bristol-Myers Squibb
Company and Pfizer Inc.*