**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| BRISTOL-MYERS SQUIBB COMPANY and PFIZER INC., <br><br> Plaintiffs, <br><br> v. <br><br> AUROBINDO PHARMA USA INC. and AUROBINDO PHARMA LTD., <br><br> Defendants. | C.A. No. 17-cv-374-LPS (CONSOLIDATED) |

**PLAINTIFFS' PROPOSED FINDINGS OF FACT**
**ON UNICHEM LABORATORIES, LTD.'S INFRINGEMENT**

Dated: December 20, 2019

*Of Counsel:*

William F. Lee (admitted *pro hac vice*)
Kevin S. Prussia (admitted *pro hac vice*)
Andrew J. Danford (admitted *pro hac vice*)
Timothy A. Cook (admitted *pro hac vice*)
Katherine P. Kieckhafer (admitted *pro hac vice*)
WILMER CUTLER PICKERING
  HALE AND DORR LLP
60 State Street
Boston, MA 02109
Tel: (617) 526-6000
Fax: (617) 526-5000

Amy K. Wigmore (admitted *pro hac vice*)
William G. McElwain (admitted *pro hac vice*)
Heather M. Petruzzi (admitted *pro hac vice*)
WILMER CUTLER PICKERING
  HALE AND DORR LLP
1875 Pennsylvania Avenue NW
Washington, DC 20006
Tel: (202) 663-6000
Fax: (202) 663-6363

Joseph J. Farnan, Jr. (Bar No. 100245)
Brian E. Farnan (Bar No. 4089)
Michael J. Farnan (Bar No. 5165)
FARNAN LLP
919 N. Market Street, 12th Floor
Wilmington, DE 19801
Tel: (302) 777-0300
Fax: (302) 777-0301
farnan@farnanlaw.com
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

*Counsel for Plaintiffs Bristol-Myers Squibb*
*Company and Pfizer Inc.*

# TABLE OF CONTENTS

I.  Background ...................................................................................................1

II. The '208 Patent ..........................................................................................2

    A.  Asserted Claims 13 and 104 ...............................................................2

    B.  Level of Ordinary Skill in the Art.......................................................3

    C.  Unichem Infringes the Asserted Claims of the '208 Patent...............3

III. The '945 Patent ..........................................................................................4

    A.  Asserted Claims ..................................................................................4

    B.  Claim Construction .............................................................................5

    C.  Level of Ordinary Skill in the Art.......................................................5

    D.  Unichem Infringes the Asserted Claims of the '945 Patent...............6

        1.  Technical Experts.....................................................................6

        2.  Technical Background .............................................................7

        3.  Determining particle size of API in a solid
           pharmaceutical composition ...................................................11

        4.  Dr. Berkland's testing using SEM/EDS..................................11

        5.  Analysis of Unichem's Manufacturing Process.......................16

        6.  The testing Dr. Genck relied upon is irrelevant and
           ignores the Court's claim construction order...........................18

        7.  Infringement of Claims 21 and 22 of the '945 Patent..............20

## TABLE OF ABBREVIATIONS

| Abbreviation | Description |
|---|---|
| '208 Patent | U.S. Patent No. 6,967,208 (JTX-1) |
| '945 Patent | U.S. Patent No. 9,326,945 (JTX-2) |
| ANDA | Abbreviated New Drug Application |
| Asserted Claims | For the '208 Patent, claims 13 and 104.<br>For the '945 Patent, claims 21 and 22. |
| FDA | United States Food and Drug Administration |
| NDA | New Drug Application |
| BMS | Bristol-Myers Squibb Co. |
| Pfizer | Pfizer, Inc. |
| Plaintiffs | BMS and Pfizer |
| Sigmapharm | Sigmapharm Laboratories, LLC |
| Sunshine Lake | Sunshine Lake Pharma Co., Ltd. and HEC Pharm USA Inc. |
| Unichem | Unichem Laboratories, Ltd. |
| Defendants | Sigmapharm, Sunshine Lake, and Unichem |
| UF | Uncontested Facts (D.I. 672, Ex. 1) |
| POSA | Person of ordinary skill in the art.  For the '208 Patent, a POSA would have the characteristics described at UF ¶ 20 as of September 21, 2001; for the '945 Patent, a POSA would have the characteristics described at UF ¶ 31 as of February 24, 2011. |
| CoC | Certificate of Correction |
| SEM | Scanning Electron Microscopy |
| EDS | Energy Dispersive X-ray Spectroscopy |

## I.    Background

1.       Eliquis® is an FDA-approved anticoagulant that is indicated to treat and reduce the risk of certain cardiovascular disorders.  Tr. 1281:13-1286:24 (Kowey); UF ¶¶ 35, 41-43; PTX-325 at 4.

2.       Apixaban is the active ingredient in Eliquis®.  UF ¶ 35.  The chemical name for apixaban is 1-(4-methoxyphenyl)-7-oxo-6-[4-(2-oxo-1- piperidinyl)phenyl]-4,5,6,7-tetrahydro-1H-pyrazolo-[3,4-c]pyridine-3-carboxamide.  UF ¶ 36.  The chemical structure for apixaban is:



· UF ¶ 37.

3.       These consolidated cases concern U.S. Patent Nos. 6,967,208 and 9,326,945, both of which are listed in the FDA's *Orange Book* in connection with Eliquis®.  UF ¶ 51.

4.       BMS owns the '208 Patent.  UF ¶ 13.  The'208 Patent's priority date is no later than September 21, 2001, UF ¶ 19, and the patent will expire November 28, 2026. UF ¶ 15.

5.       BMS and Pfizer jointly own the '945 Patent.  UF ¶ 26.  The '945 Patent's priority date is no later than February 24, 2011, UF ¶¶ 29-30, and it will expire February 24, 2031, UF ¶ 27.  Dr. Berkland's opinions, Plaintiffs' infringement expert, would not change if the priority date was the date the PCT application was filed, February 24, 2011 instead of the priority application.  Tr. 601:5-10 (Berkland); UF ¶ 29.

6.       Unichem submitted ANDA No. 210108 ("Unichem's ANDA") to FDA seeking approval to engage in the commercial manufacture, use, or sale of apixaban oral tablets, 2.5 mg

and 5 mg.  UF ¶ 72.  Unichem's ANDA contains certifications pursuant to 21 U.S.C. §

355(j)(2)(A)(vii)(IV) for both the '208 and '945 Patents.  *Id.*  "Unichem's ANDA products"

refers to the apixaban oral tablets that are the subject of Unichem's ANDA.

7.      Unichem has stipulated to infringement of the asserted claims of the '208 Patent.

UF ¶ 17; D.I. 665.  Unichem contests infringement of the '945 Patent.

## II.    The '208 Patent

### A.    Asserted Claims 13 and 104

8.      Claims 13 and 104 of the '208 Patent are asserted against Unichem.  UF ¶ 16.

9.      Claim 13, which is asserted, recites:

A compound according to claim 8, wherein the compound is:

1-(4-methoxyphenyl)-7-oxo-6-[4-(2-oxo-1-piperidinyl)phenyl]-
4,5,6,7-tetrahydro-1H-pyrazolo[3,4-c]pyridine-3-carboxamide

or a pharmaceutically acceptable salt form thereof.

'208 Patent (JTX-1) at 269:1-6 & Dec. 2, 2008 CoC.  That is, claim 13 recites apixaban or a

pharmaceutically acceptable salt form thereof.  Tr. 279:14-18 (MacMillan).

10.     Non-asserted claim 8, from which claim 13 depends, recites "A compound

according to claim 1, wherein the compound is selected from" among 41 chemical compounds,

"or a pharmaceutically acceptable salt form thereof."  '208 Patent (JTX-1) at 265:39-268:41 &

Dec. 2, 2008 CoC.  Apixaban is one of the 41 listed compounds (i.e., "1-(4-methoxyphenyl)-7-

oxo-6-[4-(2- oxo-1-piperidinyl)phenyl]-4,5,6,7- tetrahydro-1H-pyrazolo-[3,4-c]pyridine-3-

carboxamide").  Tr. 280:18-281:14 (MacMillan).  Non-asserted claim 1, from which claim 8

depends, recites a generic structure that includes many chemical compounds, one of which is

apixaban.  Tr. 281:15-283:7 (MacMillan); PDX-4.9 & 4.10.

11.     Claim 104, which is also asserted, recites:

– 2 –

> A compound according to claim 13, which is a crystalline compound.

'208 Patent (JTX-1) at Dec. 2, 2008 & Sept. 11, 2018 CoC.  In other words, claim 104 recites

crystalline apixaban.  Tr. 279:14-18 (MacMillan).

## B.   Level of Ordinary Skill in the Art

12.    Plaintiffs' experts opined that a POSA for the'208 Patent is:

> A professional with a graduate degree in organic chemistry, pharmaceutical chemistry, or an equivalent discipline, with experience in the synthesis, purification, and design of pharmaceutical compounds and derivatives thereof as of the date of the claimed inventions. A POSA would have worked with a team of professionals with training in related disciplines, such as pharmacology, pharmacokinetics, metabolism, toxicology, formulation, or clinical medicine as of the date of the claimed inventions.

UF ¶ 20.

13.    The Defendants' experts offered a similar POSA definition.  *Id.* ¶ 21.  The parties

agree that "[t]he opinions offered by each side's experts as to the validity and infringement of the

'208 Patent do not change based on which of the two definitions … is applied."  *Id.* ¶ 22.

## C.   Unichem Infringes the Asserted Claims of the '208 Patent

14.    Unichem has stipulated that its "submission in ANDA No. 210108 of a

certification under 35 U.S.C. § 355(j)(2)(A)(vii)(IV) with respect to the '208 Patent, which seeks

approval to market generic 2.5 mg and 5 mg apixaban tablets, was a technical act of infringement

of claims 13 and 104 of the '208 Patent" and that it "would directly infringe each of claims 13

and 104 of the '208 Patent by making, using, offering to sell, selling, or importing the products

that are the subject of Unichem's ANDA No. 210108 … , in/into the United States, to the extent

that those claims are not held invalid or unenforceable."  D.I. 665, ¶¶ 1-2 (entered Sept. 23,

2019); *see also* UF ¶ 17.

### III.   The '945 Patent

####    A.   Asserted Claims

15.     Plaintiffs asserted claims 21 and 22 of the '945 Patent.  Tr. 322:6-8 (Atwood),

596:18-29 (Berkland).  Claims 21 and 22 depend from independent claim 12 and add that the

compositions comprise 2.5 and 5 mg of apixaban, respectively.  '945 Patent (JTX-2) at 10:46-49;

Tr. 345:21-23 (Atwood), Tr. 602:12-23 (Berkland).

16.     Claim 12 provides as follows:

> A solid pharmaceutical composition comprising
>
> a therapeutically effective amount of apixaban and a
> pharmaceutically acceptable diluent or carrier,
>
> wherein apixaban comprises crystalline apixaban particles,
>
> wherein the crystalline apixaban particles have a $D_{90}$ equal to or
> less than about 89 µm, and
>
> wherein, as measured using a USP Apparatus 2 at a paddle rotation
> speed of 75 rpm in 900 mL, of a dissolution medium at 37° C., at
> least 77 wt % of apixaban in the pharmaceutical composition
> dissolves within 30 minutes in the dissolution medium, and the
> dissolution medium is 0.05 M sodium phosphate at a pH 6.8
> containing 0.05% sodium lauryl sulfate.

17.     The Asserted Claims are directed to a solid pharmaceutical composition.  Tr.

1191:15-18 (Genck), 1348:24-1349:7 (Chambliss), 1666:19-1667:9 (Myerson).  A POSA would

understand a solid pharmaceutical composition to refer to the finished drug product.  Tr.

1191:19-22 (Genck).

18.     The solid pharmaceutical composition comprises a "therapeutically effective

amount of apixaban and a pharmaceutically acceptable diluent or carrier," wherein some of that

apixaban "comprises crystalline apixaban."  '945 Patent (JTX-2) at 10:13-18; Tr. 1666:19-

1667:9 (Myerson).  The "crystalline apixaban particles have a $D_{90}$ equal to or less than 89 μm." '945 Patent (JTX-2) at 10:19-20; Tr. 1666:19-1667:9 (Myerson).

19.     The Asserted Claims also recite a specific dissolution rate of the pharmaceutical composition "wherein, as measured using a USP Apparatus 2 at a paddle rotation speed of 75 rpm in 900 ml, of a dissolution medium at 37° C., at least 77 wt % of apixaban in the pharmaceutical composition dissolves within 30 minutes in the dissolution medium, and the dissolution medium is 0.05 M sodium phosphate at a pH 6.8 containing 0.05% sodium lauryl sulfate."  '945 Patent (JTX-2) at 10:21-27; Tr. 1666:19-1667:9 (Myerson).

20.     Unichem disputes only one limitation: "wherein the crystalline apixaban particles have a $D_{90}$ equal to or less than about 89 microns."  Tr. 603:3-15, 603:18-23 (Berkland), 1144:7-9, 1190:12-17 (Genck); UF ¶¶ 73-79.

## B.     Claim Construction

21.     The Court construed "apixaban particles have a $D_{90}$" to have its plain and ordinary meaning.  UF ¶ 34.  The plain meaning is that 90% of the apixaban particles by volume have a diameter of less than or equal to 89 microns. UF ¶ 34; Tr. 604:12-17 (Berkland).

22.     The Asserted Claims do not require measurement of apixaban particle size by any particular method or require measuring the starting API.  D.I. 380, 10; Tr. 643:11-15 (Berkland), 1191:23-1192:7 (Genck), 1349:8-10 (Chambliss), 1716:12-17 (Myerson).

## C.     Level of Ordinary Skill in the Art

23.     Plaintiffs' experts opined that a POSA for the '945 Patent is:

> A person that has a Ph.D. or Master's degree or a Bachelor's degree with commensurate experience in chemistry, chemical engineering, pharmacy, pharmaceutical science or an equivalent discipline and has an understanding of the properties of active pharmaceutical ingredients, the design of solid pharmaceutical dosage forms, and

knows or has access to techniques to characterize solid
pharmaceutical products.

UF ¶ 31.

24.     The Defendants' experts offered a similar POSA definition.  *Id.* ¶ 32.  The parties

agree that "the opinions offered by each side's experts as to the validity and infringement of the

'945 Patent do not change based on which of the two definitions … is applied." *Id.* ¶ 33.

### D.     Unichem Infringes the Asserted Claims of the '945 Patent

#### 1.     Technical Experts

25.     Dr. Cory Berkland was retained by Plaintiffs to assess whether Unichem's ANDA

products infringe the asserted claims of the '945 Patent.  Tr. 591:19-592:1 (Berkland).

26.     Dr. Berkland received a Bachelor's degree in chemical engineering from Iowa

State University and a Master's and Ph.D in chemical engineering from the University of Illinois.

Tr. 592:14-21 (Berkland); PTX-787 at 1.

27.     Dr. Berkland is currently employed at the University of Kansas as the Solon E.

Summerfield Distinguished Professor.  He is a professor in both the Department of

Pharmaceutical Chemistry and Department of Chemical and Petroleum Engineering.  Tr. 592:23-

593:4 (Berkland); PTX-787 at 1.  His research focuses on pharmaceutical formulation and the

delivery of pharmaceuticals to patients.  Tr. 593:13-15 (Berkland).

28.     Dr. Berkland is an expert in the preparation and analysis of pharmaceutical

formulations.  Tr. 594:17-21 (Berkland).

29.     Dr. Allan Myerson is Plaintiffs' expert with respect to the validity of the '945

Patent.  Tr. 1662:15-18 (Myerson).  He is a professor at the Massachusetts Institute of

Technology whose research focuses on pharmaceutical manufacturing with an emphasis in issues

related to crystallization, solid forms of pharmaceuticals, and novel solid dosage forms including

solid pharmaceutical formulations.  Tr. 1663:6-14 (Myerson); PTX-816 at 1.  Dr. Myerson is an expert in pharmaceutical formulation analysis.  Tr. 1664:18-21 (Myerson).

30.     Dr. Wayne Genck is Unichem's expert with respect to the '945 Patent infringement analysis.  Tr. 1131:11-12, 1190:8-11 (Genck).  He is chief engineer and owner of Genck International with experience in particle size distribution of solid materials.  Tr. 1131:6-10, 1136:1-14 (Genck).

31.     Dr. Walter Chambliss is Defendants' expert with respect to the '945 Patent validity analysis.  Tr. 1222:18-20 (Chambliss).  He is a professor emeritus and a research professor in the pharmaceutics department at the University of Mississippi with experience in the BCS Classification, dissolution testing, and formulation development.  Tr. 1223:18-1224:13 (Chambliss).

### 2.     Technical Background

32.     There are many methods for measuring particle size.  Tr. 1671:14-17 (Myerson). These methods may include laser light scattering, imaging, and many others.  Tr. 1671:18-1672:5 (Myerson).

33.     Scanning electron microscopy ("SEM") is a type of imaging that uses a high-powered microscope with an electron beam as the energy source.  Tr. 597:13-598:3 (Berkland). The electron beam is projected onto the surface of a sample and electrons are reflected back up to a detector.  Tr. 597:13-598:3 (Berkland).  The detector converts the electrons into an image. Tr. 597:13-598:3 (Berkland).  At the same time, the imaging software produces a scale bar on the image which can be used to measure particle size.  Tr. 598:4-10 (Berkland).

34.     The prior art describes the use of imaging techniques, such as SEM, to measure particle size.  Tr. 605:24-606:3 (Berkland); PTX-394 at BMSAPIXE_0001804.  This includes

describing the use of imaging techniques such as SEM to measure particle size of pharmaceutical compositions. Tr. 609:9-21 (Berkland); PTX-412 at BMSAPIXE_0002547.

35.     SEM can be used to determine the particle size simply from taking a picture and measuring the size of the particles in that picture using the scale bar. Tr. 606:8-16 (Berkland), PTX-394 at BMSAPIXE_0001804.

36.     Energy-dispersive X-ray spectroscopy ("EDS") is an analytical technique that uses the exact same SEM instrument to identify the atoms present in a sample. Tr. 598:16-599:7 (Berkland). Using the same electron beam, a separate detector collects x-rays emitted from the sample. Tr. 598:16-599:7 (Berkland). Each element emits a particular x-ray and can be used to identify that element. Tr. 598:16-599:7 (Berkland). For example, carbon emits a specific x-ray, oxygen has its own x-ray, and nitrogen another distinct x-ray. Tr. 598:16-599:7 (Berkland). The detector can convert the x-ray signals into colors. Tr. 598:16-599:7 (Berkland). The image generated is also known as an elemental map. Tr. 600:8-11 (Berkland).

37.     SEM-EDS is the combination of SEM and EDS on the same analytical machine. Tr. 599:10-13 (Berkland). To use the two techniques together, SEM is used to image the sample and EDS superimposes the elemental maps onto that image to identify the elements that make up the sample. Tr. 599:14-19 (Berkland).

38.     The prior art discloses the use of SEM-EDS in pharmaceutical compositions. Tr. 606:25-607:3 (Berkland). Figure 6 of PTX-362 ("Liu"), published in 2009, shows a cross-section of a pharmaceutical solid, and both SEM and EDS are used to take a picture and subsequently analyze the composition of that cross-section. Tr. 607:4-10 (Berkland); PTX-362 at BMSAPIXE_0000116.

39.     In PTX-402 ("Reverchon"), published in 2008, the authors use SEM-EDS to analyze composite microparticles, a type of solid pharmaceutical composition.  Tr. 608:1-14 (Berkland); PTX-402 at BMSAPIXE_0002240.  Reverchon describes the analysis of composite microparticles containing an excipient hydroxypropyl methylcellulose ("HPMC") and ampicillin.  Tr. 608:15-22 (Berkland); PTX-402 at BMSAPIXE_0002240.

40.     Powders, like those measured in Reverchon, are an example of a solid pharmaceutical composition.  Tr. 666:17-667:2 (Berkland).

41.     Reverchon analyzed particle size of HPMC/ampicillin microparticles by both SEM imaging and laser light scattering.  Tr. 609:25-610:10 (Berkland); PTX-402 at BMSAPIXE_0002244.  Reverchon measured the particle size of the microparticles by SEM by examining 20 images.  Tr. 666:8-16 (Berkland); PTX-402 at BMSAPIXE_0002242.

42.     Reverchon compared both the $D_{90}$ and $D_{50}$ particle sizes calculated from both SEM and laser light scattering data.  PTX-402 at BMSAPIXE_0002244 (Table 1); Tr. 666:8-16 (Berkland), 1358:10-12, 1358:14-1359:5 (Chambliss), 1729:13-20 (Myerson).  Reverchon concluded that the results from both methods were comparable.  PTX-402 at BMSAPIXE_0002244; Tr. 1729:21-25 (Myerson).

43.     Another reference, PTX-430 ("Bosquillon"), published in 2001, also demonstrates that particle sizes measured by image analysis are comparable to measurements taken by four other techniques including laser light scattering.  PTX-430 at BMSAPIXE_0003258; Tr. 1356:22-1357:15 (Chambliss), 1728:10-24 (Myerson).  Bosquillon measured one-hundred particles using SEM.  PTX-430 at BMSAPIXE_0003253; Tr. 1729:4-7 (Myerson).

44.     SEM can be used alone to measure particle size when the identity of a substance is known.  Tr. 599:20-600:1 (Berkland).  SEM-EDS can be used to measure particle size of a

– 9 –

particular component of a mixture.  Tr. 600:2-7 (Berkland).  A POSA can use the EDS technique

to determine the identity of a particular particle and then overlay that elemental map on top of an

SEM image to measure the size of that particular particle.  Tr. 598:4-10, 600:12-17 (Berkland).

45.     SEM-EDS is a routine and well-understood technique, and a person of ordinary

skill in the art would have known that it was an available method to measure the size and

composition of pharmaceutical particles as of the priority date.  Tr. 605:4-9, 609:25-610:3

(Berkland), 1721:12-23 (Myerson).

46.     Plaintiffs' expert Dr. Myerson had also used SEM-EDS on pharmaceutical

compositions.  Tr. 1721:12-1722:2 (Myerson).  While SEM-EDS requires the liberation of the

contents from the tablet, which is a standard technique as discussed below in paragraph 69, Dr.

Myerson also discussed techniques available at the time of the invention that could be used to

measure particle size in the tablet itself, including infrared spectroscopy, FT-NIR and Raman

spectroscopy.  Tr. 1722:15-23, 1722:8-11, 1724:1-5 (Myerson); PTX-431; PTX-435.

47.     Unichem's expert Dr. Genck agreed that SEM-EDS was available at the time of

the invention, Tr. 1178:6-9, 1202:5-19 (Genck).

48.     Dr. Genck and Dr. Chambliss agreed that imaging techniques, such as SEM-EDS,

could be used to measure particle size.  Tr. 1202:20-1203:24 (Genck), 1352:23-1353:4

(Chambliss).  Calculating a $D_{90}$ from particle size data can be done by software or by hand.  Tr.

1349:17-23, 1349:24-13:50:4 (Chambliss), 1670:9-1671:11 (Myerson).  Dr. Chambliss admitted

that a POSA could calculate a $D_{90}$ from particle size data obtained from image analysis  Tr.

1353:5-12 (Chambliss).

### 3.      Determining particle size of API in a solid pharmaceutical composition

49.      Using the formulations and manufacturing methods provided in the '945 Patent, a POSA could measure the particle size of starting apixaban API by laser light scattering and make a solid pharmaceutical composition that falls within the limitations of the asserted claims.  Tr. 1719:11-1720:6 (Myerson).

50.      If the starting API is dissolved during the manufacturing process, a POSA would have to measure the particle size of the API from the final tablet because the starting API would not accurately reflect the API in the final formulation.  Tr. 1720:24-1721:11 (Myerson).

### 4.      Dr. Berkland's testing using SEM/EDS

51.      Dr. Berkland tested the particle size of apixaban in Unichem's ANDA products using SEM-EDS.  Tr. 604:23-25 (Berkland).

52.      Of all of the ingredients used in Unichem's tablets, only apixaban contained the element nitrogen.  Tr. 612:13-613:10 (Berkland).  Dr. Berkland was therefore able to identify apixaban in Unichem's ANDA products by looking for the presence of nitrogen atoms by EDS. Tr. 613:11-14 (Berkland).

53.      Dr. Berkland first ran a number of controls.  Tr. 610:13-21 (Berkland).  He analyzed the Unichem starting API as well as the excipients used in Unichem's manufacturing process by SEM-EDS.  Tr. 610:24-611:5, 611:17-612:12 (Berkland); PTX-1205 at 3; PTX-1219, PTX-1220; PTX-1221; PTX-1222.

54.      To obtain the excipients used in Unichem's ANDA products Dr. Berkland analyzed Unichem's ANDA to determine the exact excipients and vendors used by Unichem. Tr. 611:22-612:1 (Berkland).  He then obtained the same excipients directly from those vendors. Tr. 611:22-612:1 (Berkland).  Dr. Berkland confirmed that the excipient samples were the same

as those used by Unichem by comparing the certificates of analysis he received with the excipient samples to the certificates of analysis provided in Unichem's ANDA. Tr. 612:2-9 (Berkland).

55.     Dr. Berkland's SEM-EDS analysis of Unichem's starting apixaban API showed a uniform distribution of nitrogen across the entire particle. Tr. 613:22-615:16 (Berkland); PTX-1222; PTX-1205 at 3. The particle size of the Unichem apixaban API was quite large, several hundred microns. Tr. 615:22-616:2 (Berkland).

56.     The size of Unichem's starting API does not have any bearing on the particle size in the final tablet because Unichem dissolves its API in its manufacturing process. Tr. 616:3-9 (Berkland). The size of Unichem's starting API is unrelated to the size of the apixaban articles in Unichem's final ANDA Products. Tr. 611:6-16 (Berkland), 1201:10-17 (Genck); *see also* 1207:21-24 (Genck).

57.     Dr. Berkland's SEM-EDS analysis of the excipients used in Unichem's ANDA products, croscarmellose sodium, lactose anhydrous, and microcrystalline cellulose, demonstrated that there was no nitrogen present in any of the excipients and that the excipients had particle sizes on average of around 100 microns. Tr. 616:14-617:18 (Berkland); PTX-1219; PTX-1220; PTX-1221.

58.     To analyze the contents of Unichem's ANDA products by SEM-EDS, Dr. Berkland fractured a 5 mg tablet and gently removed some of the core material with a razor blade, creating a powder that could be placed in a sample holder and placed in the SEM microscope for analysis. Tr. 618:4-12 (Berkland).

59.     Because SEM-EDS only looks at the surface of samples, Dr. Berkland could not analyze an intact tablet to determine particle size. Tr. 618:17-21 (Berkland).

60.     The method Dr. Berkland applied was a standard, common method in the industry and one he had used before.  Tr. 618:13-16, 644:12-20 (Berkland).  Dr. Brittain, Sunshine Lake's expert, took five tablets and ground them with a pestle to produce a powder that could be tested by XRPD.  Tr. 1123:14-21 (Brittain).  Sigmapharm's ANDA reported that tablets for XRPD testing were prepared by grinding tablets with a mortar and pestle to make a fine powder.  Tr. 981:18-982:2 (Zaworotko); PTX-1038 at SIGMA_APIX 0051799.

61.     Dr. Berkland concluded that his sample preparation method had no impact on the sample because the size of the granules liberated from the tablet was consistent with the size of the excipients used in the starting formulation.  Tr. 618:22-619:4, 668:2-22 (Berkland); PTX-1205; PTX-1219; PTX-1220; PTX-1221.

62.     Unichem's ANDA documents show that the particle size of the common blend is a D50 of approximately 150 microns.  Tr. 654:11-656:16 (Berkland).

63.     If a granule breaks, there would be a portion of the granule that did not look the same as the rest of the granule either by SEM or EDS.  Tr. 668:2-22 (Berkland).  In Dr. Berkland's images, there was no indication that any of the granules were broken during preparation.  Tr. 668:2-22 (Berkland).

64.     Dr. Berkland tested samples from three different batches of Unichem's ANDA products having the batch numbers GAPH16002, GAPH16003, and GAPH16004.  Tr. 619:14-25 (Berkland); PTX-1205 at 7-12; PTX-1214; PTX-1215; PTX-1216; PTX-1217; PTX-1218.  He tested three different tablets from batch GAPH16004, PTX-1205 at 7-9; PTX-1214, PTX-1215, PTX-1216, and tested two different sites on the material from a single tablet from batch GAPH16003, PTX-1205 at 10-11; PTX-1218.  Tr. 619:13-620:4 (Berkland).  He tested a single tablet from GAPH16002.  Tr. 619:13-25 (Berkland); PTX-1205 at 12; PTX-1217.

65.     Consistent with methods he used previously, Dr. Berkland randomly selected granules for analysis from a region of powder on the sample holder.  Tr. 620:17-23 (Berkland).

66.     In total, Dr. Berkland analyzed 68 granules.  Tr. 620:1-4 (Berkland).

67.     The size of the granules themselves is not at issue.  Rather, the '945 Patent requires assessing the size the apixaban particles contained on those granules.  Tr. 661:6-8 (Berkland); '945 Patent (JTX-2) at 3:20-29.  The '945 Patent discloses that the term "particles" refers to individual drug substance particles, whether they exist singly or are agglomerated.  '945 Patent (JTX-2) at 3:20-22.  Thus, the particle size limitation addresses the apixaban particles in the agglomerate, not the agglomerate itself.  '945 Patent (JTX-2) at 3:22-29.

68.     Most of the granules, approximately 85%, contained apixaban particles.  Tr. 620:5-11 (Berkland).  This was consistent with Unichem's manufacturing process, in which extragranular excipients are added after spray granulation in an amount equal to approximately 15% of the total tablet weight.  Tr. 620:5-11 (Berkland).

69.     Each granule containing apixaban had dozens to hundreds of apixaban particles on the surface of the excipient particle.  Tr. 620:12-16 (Berkland).  In total, Dr. Berkland observed thousands of apixaban particles.  Tr. 660:22-661:8 (Berkland).

70.     Dr. Berkland observed that each granule showed a continuous distribution of carbon and oxygen.  Tr. 623:7-17 (Berkland); PTX-1205 at 7.  The distribution of carbon and oxygen was consistent with his expectation that the carbon and oxygen atoms are distributed across the entire excipient particle.  *Id.*

71.     The distribution of apixaban, seen as the nitrogen signal, was different than the carbon and oxygen signals and instead appeared as small islands of nitrogen separated from one another.  *Id.*

72.     The distribution of nitrogen seen in Unichem's ANDA products was different

than that seen in the Unichem starting API.  Tr. 624:9-24 (Berkland).  While the Unichem

starting API was a several-hundred-micron particle that showed a contiguous nitrogen signal

over the entire particle, the nitrogen signal in the Unichem's ANDA products, was much smaller.

*Id.*

73.     Using the scale bar Dr. Berkland determined the apixaban particles in Unichem's

ANDA products were all approximately 1 micron in size.  Tr. 623:18-24, 624:25-625:9

(Berkland); PTX-1205 at 7.  In every sample Dr. Berkland tested, the apixaban particles were

about 1 micron in size.  Tr. 623:25-624:6, 625:10-14, 625:25-627:4 (Berkland); PTX-1205;

PTX-1214; PTX-1215; PTX-1216; PTX-1217; PTX-1218.

74.     The apixaban particles in Unichem's ANDA products were almost 100 times

smaller than the claim limitation of equal to or less than 89 microns.  Tr. 625:15-21, 627:8-11

(Berkland).

75.     Dr. Berkland did not observe a single apixaban particle approaching 89 microns

in Unichem's ANDA products.  Tr. 628:3-7, 629:17-19 (Berkland).

76.     Dr. Berkland concluded his results were representative of all of Unichem's

ANDA products because "from granule to granule, tablet to tablet and batch to batch, [he]

consistently saw this pattern and the size of red domains which told [him] that the apixaban

particle size was consistently around 1 micron."  Tr. 623:25-6, 628:12-22 (Berkland).

77.     A POSA would understand that content uniformity is important.  Tr. 1697:23-

1698:4 (Myerson).  Content uniformity ensures that the right amount of active ingredient is

contained in every tablet by uniformly dispersing the active ingredient in the tablet.  Tr. 1243:8-

1244:2 (Chambliss), 1697:23-1698:4 (Myerson).  A POSA would understand that a solid

pharmaceutical composition would need to have content uniformity.  Tr. 1698:5-10 (Myerson).

78.     A POSA would expect apixaban to be uniformly distributed throughout

Unichem's ANDA products.  Tr. 628:23-629:4 (Berkland).

79.     There was no indication in Unichem's ANDA that the apixaban was not

uniformly distributed throughout the tablets.  Tr. 628:23-629:4 (Berkland).

80.     Because all of the apixaban particles Dr. Berkland observed were approximately

100 times smaller than 89 microns, he concluded that the crystalline apixaban particles contained

in Unichem's ANDA products had a $D_{90}$ by volume of much less than 89 microns.  Tr. 629:10-

16 (Berkland).  For that reason, Dr. Berkland did not calculate a precise $D_{90}$ value for the

apixaban particles contained in Unichem's ANDA products.  Tr. 629:6-9 (Berkland).

### 5.     Analysis of Unichem's Manufacturing Process

81.     Dr. Berkland also assessed Unichem's manufacturing process to confirm his

experimental observations.  Tr. 629:20-631:4 (Berkland); PTX-1126; PTX-1127.

82.     Unichem manufactures its ANDA Products by a process called fluidized bed

manufacturing.  Tr. 631:9-16 (Berkland).

83.     First, dry excipients including lactose anhydrous, microcrystalline cellulose, and

croscarmellose sodium are fed into a fluidized bed granulator and air is passaged underneath

them.  Tr. 631:9-632:8 (Berkland); PTX-1126 at UniApix00000720; PTX-1127 at

UniApix00000895.

84.     In parallel, the starting apixaban API is completely dissolved in volatile solvents.

Tr. 632:1-8 (Berkland).  These solvents are methylene chloride and isopropyl alcohol.  PTX-

1126 at UniApix00000720; PTX-1127 at UniApix00000895.  The concentration of apixaban in

this solution is very dilute, 1.2 percent.  Tr. 632:9-25 (Berkland); PTX-1126 at

UniApix00000720, 723, 730; PTX-1127 at UniApix00000895, 898.

85.     The apixaban solution is then sprayed onto the surface of the excipient particles

floating in the fluidized bed granulator. Tr. 632:9-25 (Berkland); PTX-1126 at

UniApix00000721; PTX-1127 at UniApix00000896.  Droplets containing apixaban impact the

surface of the dry excipients.  Tr. 632:9-25 (Berkland).

86.     The volatile solvents in the droplet evaporate off, leaving behind small apixaban

particles.  Tr. 632:9-25 (Berkland).

87.     The use of volatile solvents and a high temperature in Unichem's manufacturing

process ensures that the solvents evaporate quickly.  PTX-1126 at UniApix00000767; PTX-1127

at UniApix00000979.

88.     The parameters used in this process guarantee that only very small apixaban

particles are deposited on the surface of the excipient particles.  Tr. 633:1-7 (Berkland).

89.     The final result is a granule, a composite of the excipient particle with apixaban

particles deposited on the surface.  Tr. 632:9-25 (Berkland).

90.     After granulation, subsequent steps are undertaken to create the final tablet.  Tr.

633:14-20.  None of the subsequent steps would have any impact on the size of the apixaban

particles.  Tr. 633:21-24 (Berkland); PTX-1126 at UniApix00000767.

91.     The apixaban particle size Dr. Berkland observed in Unichem's ANDA products

using SEM-EDS was consistent with apixaban particle size a POSA would expect Unichem's

manufacturing process to produce.  Tr. 633:8-13 (Berkland).

92.     There are no material differences in the manner in which the Unichem 2.5 mg

tablet is manufactured as compared to the 5 mg tablet.  Tr. 634:21-635:3 (Berkland); PTX-1126;

– 17 –

PTX-1127.  Thus, the apixaban particle size in Unichem's 2.5 mg ANDA Product will be the same as that in Unichem's 5 mg ANDA Product.  Tr. 634:15-20 (Berkland).

93.     Dr. Berkland's testing shows that Unichem's ANDA products infringe Claims 21 and 22 of the '945 Patent.  Tr. 635:13-17 (Berkland).

### 6.     The testing Dr. Genck relied upon is irrelevant and ignores the Court's claim construction order

94.     Dr. Genck never submitted an opening expert report on validity and submitted only a single rebuttal report on noninfringement.  Tr. 1189:24-1190:11 (Genck).

95.     Dr. Genck relied upon particle size testing performed on Unichem's starting apixaban API reported in Unichem's ANDA.  Tr. 1197:2-8 (Genck).

96.     Dr. Genck also independently tested Unichem's starting apixaban API.  Tr. 1196:23-1197:1 (Genck).

97.     Dr. Genck's testing produced different results than the particle size testing reported in Unichem's ANDA.  Tr. 1216:2-1217:4 (Genck).  The two tests differed by more than 150 microns.  Tr. 1217:1-4 (Genck).

98.     Because both tests showed that the particle size of Unichem's starting API was sufficiently above the limit of 89 microns, the difference did not impact Dr. Genck's opinion. Tr. 1217:17-1218:3 (Genck).

99.     Dr. Genck was not looking for a specific value, he was just looking to show that the values were sufficiently above the claimed threshold.  Tr. 1218:4-14, 1218:22-1219:1 (Genck).

100.    Dr. Genck acknowledged that Unichem dissolves the starting API and then sprays the dissolved apixaban solution onto excipients.  Tr. 1199:4-6, 1199:17-24 (Genck).

101.     Dr. Genck admitted that apixaban would not be dissolved in the dry granulation manufacturing process disclosed in the '945 Patent.  Tr. 1211:14-18 (Genck).

102.     Dr. Genck admitted he had no evidence that the particle size of the starting API is the same as the particle size of the crystalline apixaban in Unichem's ANDA products.  Tr. 1207:21-24 (Genck).

103.     Dr. Genck agreed that the crystalline apixaban sprayed onto the excipients and ultimately formulated into Unichem's ANDA products would not be the same as the starting material.  Tr. 1201:10-17 (Genck).

104.     Dr. Genck has no experimental evidence of any subsurface apixaban particles in Unichem's ANDA products.  Tr. 1205:21-24 (Genck).

105.     Dr. Genck conducted no testing on the apixaban in Unichem's ANDA products. Tr. 1197:10-13, 1198:16-21 (Genck).  Dr. Genck conducted no analysis of Unichem's ANDA products via SEM-EDS.  Tr. 1201:21-23 (Genck).

106.     Dr. Genck admitted that he did not know the particle size of the apixaban in Unichem's ANDA products.  Tr. 1206:24-1207:15 (Genck).

107.     Dr. Genck offered no opinions on whether the particle size of the crystalline apixaban in Unichem's 5 mg tablets would be different than the apixaban in Unichem's 2.5 mg tablets.  Tr. 1212:21-25 (Genck).

108.     During claim construction, Dr. Genck proposed that the term "apixaban particles have a $D_{90}$" be construed as: "$D_{90}$ is measured by laser light scattering (such as Malvern light scattering) of bulk apixaban particles."  Tr. 1193:11-15 (Genck).

109.     The Court rejected that construction and instead adopted the plain and ordinary meaning of the term.  Tr. 1194:19-1195:6 (Genck).

– 19 –

110.    The claim construction opinion states that "[n]othing in the patent requires particle size to be measured one and only one way, in particular only by a laser light scattering method using only bulk apixaban particles, as Unichem contends."  D.I. 380 at 10.

111.    Dr. Genck was aware of the Court's claim construction opinion, but stated "I'm not necessarily saying that[,] because it is an opinion, that I'm going to agree with it as a person – a person of ordinary skill in the art."  Tr. 1195:7-22 (Genck).

112.    In assessing infringement, Dr. Genck applied his opinion that the only particle size testing method claimed by the '945 Patent is one that measures the particle size of the starting apixaban API by laser light scattering.  Tr. 1195:23-1196:3, 1196:8-19 (Genck).

### 7.    Infringement of Claims 21 and 22 of the '945 Patent

113.    Unichem's 2.5 mg ANDA Product infringes claim 21 of the '945 Patent.

114.    Unichem's 2.5 mg ANDA Product infringes claim 22 of the '945 Patent.

115.    Unichem's 5 mg ANDA Product infringes claim 21 of the '945 Patent.

116.    Unichem's 5 mg ANDA Product infringes claim 22 of the '945 Patent.

Dated: December 20, 2019

Respectfully submitted,

FARNAN LLP

*Of Counsel:*

/s/ Michael J. Farnan

William F. Lee (admitted *pro hac vice*)
Kevin S. Prussia (admitted *pro hac vice*)
Andrew J. Danford (admitted *pro hac vice*)
Timothy A. Cook (admitted *pro hac vice*)
Katherine P. Kieckhafer (admitted *pro hac vice*)
WILMER CUTLER PICKERING
   HALE AND DORR LLP
60 State Street
Boston, MA 02109
Tel: (617) 526-6000
Fax: (617) 526-5000

Joseph J. Farnan, Jr. (Bar No. 100245)
Brian E. Farnan (Bar No. 4089)
Michael J. Farnan (Bar No. 5165)
919 N. Market Street, 12th Floor
Wilmington, DE 19801
Tel: (302) 777-0300
Fax: (302) 777-0301
farnan@farnanlaw.com
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

*Counsel for Plaintiffs Bristol-Myers Squibb*
*Company and Pfizer Inc.*

Amy K. Wigmore (admitted *pro hac vice*)
William G. McElwain (admitted *pro hac vice*)
Heather M. Petruzzi (admitted *pro hac vice*)
WILMER CUTLER PICKERING
   HALE AND DORR LLP
1875 Pennsylvania Avenue NW
Washington, DC 20006
Tel: (202) 663-6000
Fax: (202) 663-6363